NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

WILLARD E., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, E.E., H.E., T.E., *Appellees*.

No. 1 CA-JV 16-0540
FILED 9-26-2017

Appeal from the Superior Court in Maricopa County
No.  JD 510749
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda L. Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Margaret H. Downie joined.

---

**C A M P B E L L**, Judge:

¶1        Willard E. ("Father") appeals the termination of his parental rights to his three children.[1] He challenges the juvenile court's findings of a prior dependency, Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(11), fifteen months in an out-of-home placement, A.R.S. § 8-533(B)(8)(c), and chronic substance abuse, A.R.S. § 8-533(B)(3). He also challenges the juvenile court's findings that termination was in the children's best interests, and that DCS's reunification efforts were adequate. For the reasons explained, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In January 2013, the juvenile court found Father's children dependent and placed the children in ADES custody.[2] ADES alleged Father was unable to parent due to domestic violence, substance abuse (methamphetamine), and neglect (inability to provide stable housing or appropriate parental care). Subsequently, Father successfully completed reunification services and the children were returned to his physical custody. In December 2013, the juvenile court dismissed the first dependency.

¶3        Seven months after the dismissal, Father was arrested for possession or use of dangerous drugs (methamphetamine). Three months later, the juvenile court again found the children dependent based on similar concerns, and again placed the children into DCS's custody. Father was subsequently incarcerated for the drug offense. During the second dependency proceeding, DCS provided reunification services, including supervised visitation, parent-aide services, TASC, and TERROS.

---

[1]        The juvenile court also terminated Mother's parental rights. She is not a party to this appeal.

[2]        ADES is the predecessor agency to the Arizona Department of Child Safety ("DCS").

¶4         Two years later, the children's guardian ad litem moved for termination of Father's parental rights based on substance abuse, fifteen months in an out-of-home placement, and a prior dependency. The juvenile court held a contested severance hearing. DCS presented evidence that a month after his arrest, Father missed drug testing. When he finally tested later that month, he tested positive for methamphetamine. In October, he continued to test positive for methamphetamine and continued to deny using drugs. The DCS caseworker testified Father's substance abuse was a major ongoing concern, especially given his drug conviction, disclosure of a history of methamphetamine use, and positive drug tests. Additionally, Father had not consistently participated in drug treatment services before or during his incarceration. Although Father's last drug test was negative, he had not submitted to drug testing for almost two years before the severance hearing.

¶5         At the time of the hearing, Father was still incarcerated for the drug offense and on work furlough. Father admitted he often failed to participate in reunification services involving drug testing and treatment. He claimed he was unable to participate, before his incarceration, because of illness and frequent hospitalization. He also claimed to have participated in alternative drug testing and drug therapy, both before and during his incarceration, but provided the court no verification of his participation. *See infra* ¶¶ 10-11. He denied that his drug use impacted his ability to parent his children.

¶6         The juvenile court found DCS had proven the three statutory grounds for termination by clear and convincing evidence. After finding by a preponderance of evidence termination was in the children's best interests, the juvenile court terminated Father's parental rights.

## DISCUSSION

¶7         We view the evidence and reasonable inferences in the light most favorable to sustaining the juvenile court's termination order. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Id.* (citation omitted). This court will not, therefore, reweigh the evidence. *Id.* We will affirm a termination order supported by reasonable evidence. *Id.*

¶8         Termination of a parent's parental rights requires the juvenile court to find at least one statutory ground for termination by clear and

convincing evidence, A.R.S. § 8-537(B), and that DCS has proven by a preponderance of the evidence that termination is in a child's best interests, *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Termination based on a prior dependency requires the juvenile court to find: first, the child was cared for in an out-of-home placement under court order; second, DCS made diligent efforts to provide appropriate reunification services; and third, pursuant to court order the child was returned to the legal custody of the parent from whom the child was removed. A.R.S. § 8-533(B)(11). The juvenile court must also find that

> Within eighteen months after the child was returned, pursuant to court order, the child was removed from that parent's legal custody, the child is being cared for in an out-of-home placement under the supervision of the juvenile court, the division or a licensed child welfare agency and the parent is currently unable to discharge parental responsibilities.

A.R.S. § 8-533(B)(11). Finally, the juvenile court must consider the availability of reunification services and the participation of the parent in those services. A.R.S. § 8-533(D).

### I.     Prior Dependency—Parental Responsibilities[3]

**¶9**          Father challenges the juvenile court's finding that at the time of the severance hearing, he was not currently "capable of parenting his children" within the meaning of A.R.S. § 8-533(B)(11). Father does not challenge the juvenile court's findings on the other statutory factors.

**¶10**          Reasonable evidence supports the finding that, at the time of the severance hearing, Father was "currently" unable to discharge his parental responsibilities. While Father offered "a number of excuses" for his failure to participate in drug testing and drug treatment, the juvenile court did not find him to be credible. For example, Father claimed he had been hospitalized during most of the dependency, but he offered inconsistent testimony on the length and dates of his hospitalizations; he first testified he was hospitalized "at least two weeks out of the month" but

---

[3]          Because we affirm termination of Father's parental rights on the ground of a prior dependency, "we need not consider whether the trial court's findings justified severance on the other grounds announced by the court." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251, ¶ 27 (2000).

later said there were "times it might have been three or four days" some months. DCS also impeached Father's testimony with evidence that he was available for testing, as evidenced by his participation in other services on the dates he claimed to be hospitalized.

¶11        Father never submitted any documentation verifying trips to the hospital which resulted in him being unable to participate in drug testing or treatment. While Father claimed he was routinely tested for drugs during his frequent hospitalizations and subsequent incarceration, he failed to provide DCS or the court with any evidence to substantiate the existence or results of alternative drug tests.

¶12        The juvenile court determined that Father "lack[ed] insight into the seriousness of his drug abuse." At the start of the dependency, in the face of multiple positive drug tests and prosecution for possession of methamphetamine, Father continued to deny using drugs; at the severance hearing, he blamed his wife for his methamphetamine use. He never acknowledged any understanding of the impact of his drug use on the children when they were in his home. For instance, he testified it had not impacted his ability to parent because he only used drugs at "a certain time in the evening," after his children went to bed, and when they were not "in" the house.

¶13        Finally, we agree with the juvenile court's conclusion that Father did not demonstrate he had stable income or housing. At the hearing, Father claimed he was on work furlough and working for his own business earning $900 a week, but provided nothing to support this claim. He also testified that he recently purchased a home for his children to live in upon his release, but provided nothing to verify this claim.

¶14        Accordingly, reasonable evidence supports the juvenile court's finding that Father is currently unable to discharge his parental responsibilities. *See Maricopa Cty., Juv. Action No. JS-5894*, 145 Ariz. 405, 408 (App. 1985) (in determining if a parent is "unable to discharge the parental responsibilities[,]" juvenile court has flexibility to consider the unique circumstances of each termination case).

## II.    Reunification Services

¶15        Next, Father argues DCS failed to provide him "with the time and opportunity to participate in programs designed to help him [become] an effective parent." We reject this argument.

¶16        The juvenile court considered the availability of reunification services and Father's participation in those services. A.R.S. § 8-533(D).[4] Father was offered a multitude of reunification services and he admitted he did not consistently participate in the services offered. The juvenile court did not find his numerous "excuses" credible. As such, the record demonstrates that Father did not participate in the reunification services provided.

¶17        Father argues the juvenile court "improperly" shifted the burden of proving the statutory ground for termination because it ignored the lack of "diligence" by DCS. He claims that by failing to obtain his medical and probation records, DCS failed to "appropriately assess and provide the best services for [Father]." We reject this argument. The court properly weighed the evidence and held DCS to its burden. DCS was required to provide Father "with the time and opportunity to participate in programs designed to improve the parent's ability to care for the child" and to "undertake measures with a reasonable prospect of success" in reuniting the family. *Jordan C.*, 223 Ariz. at 94, ¶ 20 (citations omitted). As discussed, throughout the dependency Father did not participate in the services offered.[5] Accordingly, reasonable evidence supports the juvenile court's findings that DCS provided appropriate reunification services.

### III.    Best Interests

¶18        Father argues the juvenile court erred in finding that termination of his parental rights was in the children's best interests because of their bond with Father and there was "no harm to the children to extend [reunification] services for an additional period of time." We conclude otherwise.

¶19        Termination of parental rights is in the best interests of a child if it is either a benefit to the child or the child will be harmed if the parent's

---

[4]        In its termination order the juvenile court did not explicitly reference A.R.S. § 8-533(D), but the court did make findings that DCS had acted diligently in providing Father with reunification services and Father failed to consistently participate in those services.

[5]        At the hearing, Father attempted to admit certificates of completion for an addiction class and a parenting class but the juvenile court found that there was not good cause for Father's failure to submit the exhibits by the deadline, a finding that Father does not contest.

rights are not terminated. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Factors that support the juvenile court's findings that termination is in a child's bests interests are: immediate availability of adoption placement; whether the existing placement meets the child's needs; and whether the child is adoptable. *Id*. "In a best interests inquiry . . . we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Id*. at 4, ¶ 15. Thus, "[i]n most cases, the presence of a statutory ground will have a negative effect on the children." *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 350, ¶ 13 (App. 2013) (citation omitted).

**¶20**　　　　Here, reasonable evidence supports the juvenile court's findings that termination was in the best interests of the children. The court found the children's current placement was willing to adopt and that they were otherwise adoptable. It found the placement was meeting the children's needs and the children wanted to remain at their current placement. Although Father claims that he has a bond with the children, he is essentially asking this court to reweigh the evidence, which we will not do. *See id*. at 351, ¶ 31 (appellate court will not reweigh evidence or substitute its judgment for that of juvenile court).

## CONCLUSION

**¶21**　　　　For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to his children.



AMY M. WOOD • Clerk of the Court
FILED:　AA

7