NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MONIQUE H.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY,
D.H., D.F., R.F., C.F.,
*Appellees*.

No. 1 CA-JV 18-0382
FILED 3-5-2019

Appeal from the Superior Court in Maricopa County
No. JD33406
The Honorable Sara J. Agne, Judge

**AFFIRMED**

COUNSEL

Denise Lynn Carroll, Esq., Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

**¶1**        Monique H. ("Mother") appeals the superior court order severing her parental rights to her four children, born in 2003, 2006, 2008 and 2010, respectively.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The Department of Child Safety ("DCS") took the children into custody in November 2016 after it received a report that they had been living with their maternal grandmother since February 2016 because Mother was homeless and her whereabouts were unknown.  Additionally, DCS received information that Mother had a long history of substance abuse, might be involved with selling drugs, had a history of domestic violence with her significant other, had threatened to kill the children and had been contacted by police "numerous times" due to her "aggressive and erratic behavior."

**¶3**        Under a case plan of reunification, DCS offered Mother substance-abuse testing and treatment, parent-aide services, counseling and visitation.  Mother had weekly supervised visits with the children and, as of June 2017, was engaging in mental-health services through a self-referral.

**¶4**        On September 5, 2017, Mother had an intake interview with a parent aide, but thereafter failed to meet consistently with the aide.  Mother likewise completed a substance-abuse treatment intake, but was closed out unsuccessfully in May 2018.  She later completed 21 group sessions but missed 19 sessions between March 21, 2018 and her severance hearing in July 2018.

**¶5**        From the beginning of the dependency proceeding in November 2016, Mother was supposed to engage in random substance-abuse testing twice a week.  She failed to participate in testing through the first provider she was referred to, however, and that provider twice closed her out unsuccessfully.  Mother did not call in for substance-abuse testing

until March 26, 2018. From then through July 2018, Mother called in only 13 times out of 107 days but gave a urine sample each time it was required when she did call. Each of the five samples she submitted came back positive for marijuana, but Mother has a medical marijuana card.

¶6 When DCS first became involved in this case in November 2016, the children were staying with their maternal grandmother in Arizona and DCS initially permitted the children to remain with her. In November 2016, however, DCS took physical custody of the children and placed them in foster care. In August 2017, the children were placed with their paternal grandmother in Mississippi. Mother moved to Mississippi to be closer to the children in November 2017, but she failed to participate in services while there before she returned to Arizona at the end of December 2017. Later, one of the children returned to Arizona for psychiatric care and was placed with his maternal uncle.

¶7 On November 13, 2017, the superior court found the children dependent as to Mother and changed the case plan to guardianship. Over Mother's objection, on January 16, 2018, the superior court granted DCS's request to change the case plan to severance and adoption. DCS then moved to terminate Mother's parental rights. At the subsequent severance hearing, the court heard testimony from Mother and a DCS child specialist.

¶8 Mother testified her partner had been physically abusive to her for many years, including knocking out her teeth and breaking her nose. She stated that in more recent years he had stopped physically abusing her but that he remained mentally and emotionally controlling and abusive. Mother acknowledged that the children had witnessed episodes of domestic violence between her and her partner. Despite the abuse, she testified that she has been with her partner "on and off" for 14 years. She testified she left her partner twice before, only to return, and left him again about four weeks before the severance hearing. The DCS specialist, however, testified she believed Mother and her abusive partner might still be together because, when the specialist called Mother's phone a week or so before trial, Mother's partner answered the phone and told her they were together. The specialist also testified that she referred Mother to community resources for victims of domestic abuse, but Mother only attended two support-group meetings. On the other hand, Mother testified she completed eight weeks of domestic-violence classes.

¶9 The DCS specialist further testified that Mother failed to provide proof that she was employed or evidence of her income. She also

testified that Mother had not shown she had obtained appropriate housing by providing DCS with her current address.

¶10        In addressing the children's placement, the specialist noted that three of the children still lived with their paternal grandmother in Mississippi, while one of the children lived with a maternal uncle in Arizona.  The specialist testified that the paternal grandmother was providing a stable home and was meeting all the children's educational, emotional and mental needs.  She also testified the three children had expressed a desire to remain with their grandmother and that the grandmother was willing to adopt them.  The specialist testified that the child living in Arizona had stabilized his behavior with the aid of services.  She testified the child's uncle was providing a safe, stable, drug-free, violence-free environment; was able to meet all the child's educational, mental and emotional needs; and was willing to adopt the child.

¶11        The court granted DCS's motion, severing Mother's parental rights under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(a) (2019) (nine months' time in care).[1]  Mother timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A) (2019), 12-120.21(A)(1) (2019), -2101(A)(1) (2019) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶12        The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000).  The superior court may terminate a parent-child relationship upon clear and convincing evidence of at least one of the statutory grounds set out in A.R.S. § 8-533(B). *Michael J.*, 196 Ariz. at 249, ¶ 12.  Additionally, the court must find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).  "Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept [that] court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

¶13        Under A.R.S. § 8-533(B)(8)(a), parental rights may be terminated when

---

[1]        Absent material change since the relevant date, we cite the current version of a statute.

> [t]he child has been in an out-of-home placement for a cumulative total period of nine months or longer pursuant to court order . . . and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement.

The circumstances at issue under this statutory ground for severance are those "existing at the time of the severance." *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007).

¶14　　On appeal, Mother does not contest the court's findings that the children had been in out-of-home placement for more than nine months, nor does she argue that DCS failed to comply with its obligation to offer her appropriate reunification services.　She does, however, argue that the evidence does not support the court's finding that she substantially neglected or willfully refused to remedy the circumstances that caused the children to be taken into care.

¶15　　In support of her contention, Mother points to evidence that she participated in parenting and domestic-violence classes and that she participated in telephonic visitations with her out-of-state children and enjoyed unsupervised daily contact with her child who resides in Arizona. She also cites evidence that she has ended her relationship with her abusive partner, which, she argues, will allow her to "exercise proper and effective parental care and control" of the children.

¶16　　The record, however, contains substantial evidence in support of the superior court's finding that Mother substantially neglected or willfully refused to remedy the circumstances that caused her children to remain in care of the State.

¶17　　To begin with, the court acknowledged Mother's testimony that she participated in eight weeks of parenting and domestic-violence classes, but also noted that Mother stopped going to those classes when she moved to Mississippi.　Mother acknowledged during the hearing that she had endured years of domestic abuse, some of it in the presence of the children. She testified that she had tried to leave her abuser at least twice before, but returned to him both times before she assertedly broke things off again just before the severance hearing.　And, as noted, the DCS specialist testified Mother and her abusive partner may still be together, given that the partner picked up Mother's telephone when the specialist telephoned shortly before trial.

¶18          Mother's substance abuse was another issue.  At trial, Mother acknowledged a history of abusing prescription drugs.  Although she testified her doctor had ceased giving her prescription painkillers a few months before the termination hearing, her persistent failures to participate in substance-abuse testing and treatment over the period of the proceedings further supported the court's findings in support of termination.

¶19          Finally, although Mother cites her participation in parent-aide services and visitation, the superior court found that the parent-aide and visitation services Mother participated in "were not fruitful" because Mother would often violate visitation guidelines.

¶20          In sum, based on the record, the superior court did not abuse its discretion by finding that DCS had proved under § 8-533(B)(8)(a) that Mother substantially neglected or willfully refused to remedy the circumstances that caused her children to remain in care of the State.

¶21          Mother also argues that DCS failed to prove by a preponderance of the evidence that severance was in the children's best interests.  Specifically, Mother points to evidence that she is bonded with the children and contends that severance would create a greater detriment to the children than allowing her additional time to participate in services.

¶22          The "termination is in the child's best interests if either: (1) the child will benefit from severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).  One of the factors that may favor termination "is the immediate availability of an adoptive placement." *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377 (App. 1998).

¶23          The superior court found that all the children are in familial adoptive placements and want to be adopted by family.  The evidence recited above supports the superior court's findings that DCS proved by a preponderance of the evidence that termination is in the children's best interests.

## CONCLUSION

**¶24** Because the record fully supports the superior court's findings and conclusions, we affirm its order severing Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA