IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**DEMETRIUS L.,**
*Appellant,*

*v.*

**JOSHLYNN F., D.L.,**
*Appellees.*

---

No. CV-15-0274-PR
Filed January 12, 2016

---

Appeal from the Superior Court in Mohave County
The Honorable Richard Weiss, Judge
No. SV201404004
**AFFIRMED IN PART**

Memorandum Decision of the Court of Appeals, Division One
1 CA-JV 15-0034
Filed July 30, 2015
**REVERSED AND REMANDED**

---

COUNSEL:

Ronald S. Gilleo, Mohave County Legal Defender, Eric Devany (argued), Deputy Legal Defender, Kingman, Attorneys for Demetrius L.

Chad Joshua Winger (argued), Harris & Winger, P.C., Flagstaff, Attorneys for Joshlynn F.

---

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, TIMMER, and BERCH (RETIRED) joined.

_____

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

**¶1** We hold that in a private proceeding to sever parental rights, just as in state-initiated proceedings, a juvenile court may conclude that a proposed adoption benefits the child and supports a finding that severance is in the child's best interests.

## I.

**¶2** Joshlynn F. ("Mother") filed this action to terminate the parental rights of the biological father, Demetrius L. ("Father"), to their now 9-year old child, D.L. We view the facts, which here are largely undisputed, in a light most favorable to sustaining the juvenile court's findings. *In re Appeal in Maricopa Cty., Juv. Action No. JS-8490*, 179 Ariz. 102, 106, 876 P.2d 1137, 1141 (1994).

**¶3** Mother and Father never married but lived together for about three years after D.L.'s birth in September 2006. Their relationship ended in 2009, and Father moved to California while Mother and D.L. remained in Arizona. Thereafter, the parties had an informal visitation schedule for Father's in-person contact with D.L., but Father's visits ended in August 2010, after Father threatened Mother.

**¶4** Over the next several years, Father had no contact with D.L. other than an unpleasant encounter in Nevada in November 2013, when Father's family members punched Mother in D.L.'s presence. After August 2010, Father provided no child support and, except for one gift delivered by a family member, sent no gifts, cards, or letters to D.L.

**¶5** Mother married in 2011, and D.L. and Mother's four other children live with Mother and her husband ("Stepfather"). Stepfather has known D.L. for about six years, has a close and loving relationship with D.L., and wants to adopt him. Stepfather views and treats D.L. as his son and would "love for him to have a father." According to Mother, D.L. is terrified of Father's family and also is afraid of Father.

**¶6** Mother petitioned to sever Father's rights on the ground of abandonment. After a contested severance hearing in December 2014, the

juvenile court found by clear and convincing evidence that Father had abandoned D.L., A.R.S. §§ 8-531(1), -533(B)(1), and found by a preponderance of the evidence that severance was in D.L.'s best interests, A.R.S. § 8-533(B). The court noted that D.L. "is adoptable" and may achieve "stability and permanence" in his Mother's and Stepfather's household. The court therefore granted Mother's petition.

¶7         The court of appeals reversed the severance order based solely on its conclusion that "[the] record does not establish by a preponderance of evidence that terminating Father's parental rights is in [D.L.'s] best interests." *Demetrius L. v. Joshlynn F.*, 1 CA-JV 15-0034, at *1 ¶ 1 (Ariz. App. July 30, 2015) (mem. decision). Relying on *Jose M. v. Eleanor J.*, 234 Ariz. 13, 316 P.3d 602 (App. 2014), the court concluded that Stepfather's plan to adopt D.L. did not permit a best-interests finding because D.L. was already living with Mother and Stepfather. *Demetrius L.,* 1 CA-JV 15-0034 at * 2 ¶ 11. The court reasoned that

> whether Father's parental rights are terminated will have no effect on the stability and permanency of Child's current situation. Unlike situations in which adoption obviously benefits a child by ending the need for foster care, the adoptive plan in this case does not establish an increase in stability and permanency that necessitates terminating Father's parental rights.

*Id.* The court of appeals did not address Father's challenge to the juvenile court's finding of abandonment.

¶8         We granted review to address whether the court of appeals erred in relying on *Jose M.* to overturn the juvenile court's finding of best interests. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶9         Because the juvenile court is in the best position to weigh evidence and assess witness credibility, we accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250 ¶ 20, 995 P.2d 682, 686 (2000); *JS-8490,*

179 Ariz. at 107, 876 P.2d at 1142. Here, sufficient evidence supports the juvenile court's finding that termination of Father's parental rights is in D.L.'s best interests, and the court of appeals erred in concluding otherwise based on *Jose M.*

¶10 Like this case, *Jose M.* involved a private severance action in which the mother successfully petitioned to terminate the father's parental rights to their child, S.M., on the ground of abandonment. 234 Ariz. at 1415 ¶¶ 1–3, 316 P.3d at 603–04. The court of appeals vacated the juvenile court's finding of abandonment and remanded "for a redetermination of that issue." *Id.* at 17 ¶ 19, 316 P.3d at 606. Though stating that its resolution of the abandonment issue "renders moot whether the juvenile court erred by finding that severance is in the best interests of the child[,]" *id.* at ¶ 20, the court of appeals nonetheless addressed that issue and overturned the best-interests finding. *Id.* at 17–18 ¶ 23, 316 P.3d at 606–07.

¶11 In *Jose M.*, S.M. resided with the mother and her fiancé, who "apparently would like to adopt" the child. *Id.* at 15 ¶ 8, 316 P.3d at 604. Distinguishing state-initiated severance actions in which a child is in foster care, the court of appeals observed that S.M.'s current "living arrangement already offers stability and permanence," and "there is no suggestion that any day-to-day aspect" of that arrangement would change if the father's rights were severed. *Id.* at 18 ¶ 23, 316 P.3d at 607. Under those circumstances, the court concluded that the mother's "stated intent to marry fiancé on some undetermined future date, and fiancé's interest in adopting S.M., without more, do not establish an increase in stability and permanency for S.M. to the degree necessary to demonstrate a benefit warranting severance of Father's parental rights." *Id.*

¶12 Arizona case law involving state-initiated severance actions indicates that "[t]he best interest requirement may be met if . . . the petitioner proves that a current adoptive plan exists for the child, or even that the child is adoptable." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 50 ¶ 19, 83 P.3d 43, 50 (App. 2004) (citations omitted); *see also Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377 ¶ 5, 982 P.2d 1290, 1291 (App. 1998) (in determining best interests, a court "may properly consider in favor of severance" factors that include "the immediate availability of an adoptive placement" and "whether an existing placement is meeting the needs of the child"). When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a

juvenile court may find that termination of parental rights, so as to permit adoption, is in the child's best interests. *Mary Lou C.*, 207 Ariz. at 5051 ¶¶ 19–21, 83 P.3d at 50-51; *Audra T.*, 194 Ariz. at 378 ¶ 6, 982 P.2d at 1292.

¶13        In both *Jose M.* and this case, the court of appeals applied a more onerous standard for establishing best interests in a private severance proceeding than that applied in a state-initiated proceeding. But we find no principled reason for creating an additional hurdle in private severance actions, particularly when the governing statute does not support that distinction or require the unspecified something "more" that *Jose M.* apparently calls for. 234 Ariz. at 18 ¶ 23, 316 P.3d at 607; *see* A.R.S. § 8-533(A), (B) (permitting "[a]ny person or agency that has a legitimate interest in the welfare of a child" to petition for severance and requiring the court to "consider the best interests of the child," without distinguishing between state-initiated and private termination proceedings). There is no legal basis for placing more or less weight on the benefits from adoption depending on the identity of the petitioning party. Rather, juvenile courts must assess the relevant facts in determining on a case-by-case basis whether a preponderance of the evidence supports a best-interests finding.

¶14        Of course, a court need not automatically conclude that severance is in a child's best interests just because the child is adoptable; there may be other circumstances indicating that severance is not the best option. *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 587 ¶ 8, 588 ¶ 11, 177 P.3d 327, 329, 330 (App. 2008). Nor can we "assume that a child will benefit from a termination simply because he has been abandoned." *In re Appeal in Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5–6, 804 P.2d 730, 734–35 (1990).

¶15        "In a best interests inquiry, however, we can presume that the interests of the parent and child diverge because the court has already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 35, 110 P.3d 1013, 1020 (2005); *see also In re Maricopa Cty. Juv. Action No. JS-6831*, 155 Ariz. 556, 559, 748 P.2d 785, 788 (App. 1988) ("In most cases, the presence of a statutory ground will have a negative effect on the children[,]" which supports a best-interests finding.). Once a juvenile court finds that a parent is unfit, the focus shifts to the child's interests. *Kent K.*, 210 Ariz. at 285 ¶ 31, 287 ¶ 37, 110 P.3d at 1019, 1021. Thus, in considering best interests, the court must balance the unfit parent's "diluted" interest "against the

independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286 ¶ 35, 110 P.3d at 1020. Of foremost concern in that regard is "protect[ing] a child's interest in stability and security." *Id.* at ¶ 34 (citing *Pima Cty. Juv. Severance Action No. S-114487*, 179 Ariz. 86, 101, 876 P.2d 1121, 1136 (1994)).

**¶16** As the court in *Jose M.* correctly recognized, "[t]ermination of the parent-child relationship is in the child's best interests if the child would be harmed if the relationship continued or would benefit from the termination." 234 Ariz. at 17 ¶ 21, 316 P.3d at 606. Framed in the disjunctive, this standard permits a finding of best interests based on either a benefit to the child from severance or some harm to the child if severance is denied. *Mary Lou C.*, 207 Ariz. at 50 ¶ 19, 83 P.3d at 50; *see also James S. v. Ariz. Dep't. of Econ. Sec.*, 193 Ariz. 351, 356 ¶ 18, 972 P.2d 684, 689 (App. 1998). It is well established in state-initiated cases that the child's prospective adoption is a benefit that can support a best-interests finding. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379 ¶ 30, 231 P.3d 377, 383 (App. 2010) (listing factors to consider regarding best interests as (1) immediate availability of adoption placement; (2) whether the existing placement meets the child's needs; and (3) whether the child is adoptable) (citations omitted). A child may likewise reap benefits from adoption, warranting a best-interests finding primarily on that basis, even in a private severance action and when the child is not a ward of the state.

**¶17** Adoption obligates the adopting parent legally and financially to the child. *See* A.R.S. § 8-117(A) ("On entry of the decree of adoption, the relationship of parent and child and all the legal rights, privileges, duties, obligations and other legal consequences of the natural relationship of child and parent thereafter exist between the adopted child and the adoptive parent as though the child were born to the adoptive parent in lawful wedlock."). Adoption also solidifies the adopting parent's right to exercise custody and control of the child in the future, serving to advance the child's wellbeing. *See In re Pima Cty. Juv. Action No. B-9385*, 138 Ariz. 291, 293, 674 P.2d 845, 847 (1983). An adopted child also stands to inherit from the legal, adopting parent, without losing his or her rights to inherit from the other natural parent whose rights are severed. *See* A.R.S. §§ 14-1201(6), (12); -2103(1); -2114(B); *In re Estate of Ryan*, 187 Ariz. 311, 314, 928 P.2d 735, 738 (App. 1996). In sum, depending on the circumstances, adoption can provide sufficient benefits to support a best-interests finding in private and state severance actions alike.

### III.

¶18 Here, the court of appeals applied *Jose M.* to require Mother to present more evidence than Stepfather's immediate plan to adopt D.L. to prove that severance is in D.L.'s best interests. *See Demetrius L.*, 1 CA-JV 150034 at *2 ¶ 10; *see also Jose M.*, 234 Ariz. at 17–18 ¶¶ 20–23, 316 P.3d at 606–07. We need not decide whether the best-interests determination in *Jose M.* was correct based on its particular facts. But we disavow *Jose M.*'s reasoning with respect to (1) its distinguishing the significance of adoption in private versus state-initiated severance cases, and (2) its assessing the benefits of adoption solely in terms of whether the child's "day-to-day" living arrangement will change. The court of appeals in *Jose M.* and in this case thus erred in suggesting that a different standard applies in private severance actions and by viewing too narrowly the prospects and prospective benefits of adoption (that is, by focusing solely on whether adoption would change the child's living arrangement).

¶19 In addition, *Jose M.* is distinguishable. The alleged benefit that the child in *Jose M.* might have gained from severance arguably was uncertain because the prospective adoption was tentative. *Cf. Jose M.*, 234 Ariz. at 18 ¶ 23, 316 P.3d at 607 (noting the various uncertain contingencies in the parties' relationships). Here, in contrast, D.L. already lives in a stable household not only with a custodial parent, but also with a close, loving stepparent who is prepared and willing to adopt him. Stepfather has been married to Mother for several years, and his adoption of D.L. is much more certain than a mere possibility. *Cf. JS-500274*, 167 Ariz. at 7, 804 P.2d at 736 (finding "too speculative" to support best-interests finding mother's testimony that possible "future husband" might "wish[] to adopt" the child). On this record, the juvenile court could readily find that severance would increase D.L.'s stability and legally fortify Stepfather's relationship to him. That severance would not necessarily change "any day-to-day aspect of the current living arrangement," *Jose M.*, 234 Ariz. at 18 ¶ 23, 316 P.3d at 607, does not preclude a best-interests finding in these circumstances.

¶20 The juvenile court heard testimony that Father and D.L. have had virtually no contact for several years, and D.L. has been frightened by their few interactions. As the court observed, making D.L. adoptable would affirmatively improve his life in that it would add permanency and stability

to the de-facto father-son relationship that Stepfather and D.L. already have. Undisputed testimony established this positive relationship. Severance would not merely position D.L. as a possible adoptee waiting and hoping for a better, willing provider to come along: Stepfather is married to Mother, has financially provided for D.L. for about half of D.L.'s life, and fulfills the psychological role of a parent.

**¶21** In addition, adoption would formalize Stepfather's obligations to D.L. If Mother becomes incapacitated or dies, Stepfather would be legally and financially responsible for D.L., whose continued custody with Stepfather would be assured. Moreover, terminating Father's parental rights would avoid possible negative and psychologically harmful interactions with D.L., who has expressed fear of both Father and Father's family members. *Cf. JS-500274*, 167 Ariz. at 8, 804 P.2d at 737 (reversing best-interests finding when no evidence suggested that child feared his father, had "become emotionally attached to another parental figure," or would "gain" anything from severance). These are real benefits to D.L. that the court of appeals incorrectly discounted solely because D.L. already resides in a stable home with Mother and Stepfather and because, in the court's view, no evidence showed that Father "was harming [D.L.], incapable of parenting, or that adoption actually would provide further stability for the child." *Demetrius L.*, 1 CA-JV 15-0034, at *2 ¶ 10.

**¶22** Viewed in a light most favorable to upholding the juvenile court's findings, the record contains reasonable evidence, including D.L.'s prospective adoption by Stepfather, to support the court's finding that severance would be in D.L.'s best interests. The court of appeals thus erred in reversing that finding.

**IV.**

**¶23** We reverse the court of appeals' decision and affirm the juvenile court's finding that termination of Father's parental rights is in D.L.'s best interests. Because the court of appeals did not address Father's challenge to the juvenile court's finding of abandonment, we remand the case to the court of appeals for resolution of that issue.