NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

TASHA M., RICHARD M., J.M., *Appellant*s,

*v.*

DEPARTMENT OF CHILD SAFETY, *Appellee*.

No. 1 CA-JV 18-0205
FILED 3-26-2019

Appeal from the Superior Court in Mohave County
No. S8015JD201500023
The Honorable Douglas Camacho, Commissioner

**AFFIRMED**

COUNSEL

Harris & Winger PC, Flagstaff
By Chad J. Winger
*Counsel for Appellant, Tasha M.*

Mohave County Legal Defender's Office, Kingman
By Eric Devany
*Counsel for Appellant, Richard M.*

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Attorney for Appellant, J.M.*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jennifer M. Perkins joined.

---

**B R O W N**, Judge:

¶1        Tasha M. ("Mother"), Richard M. ("Father"), and J.M. (collectively, "Appellants") appeal the juvenile court's order terminating Mother's and Father's parental rights to J.M., asserting error because termination is not in J.M.'s best interests.  Because reasonable evidence supports the court's order, we affirm.

## BACKGROUND

¶2        Mother is the biological parent of B.R., born in 1999, S.R., born in 2001, J.M., born in 2004, and M.M., born in 2005.  Father is the biological parent of J.M. and M.M.

¶3        In 2015, the School Resource Officer at J.M.'s school reported to the Arizona Department of Child Safety ("DCS") that J.M. told a teacher her Father had been having sex with her since she was little and "I told my mom [but] she doesn't believe me."  Because further questioning resulted in a disclosure that was "limited and unspecific," DCS did not investigate the alleged abuse until a friend of the family made a second, more detailed report.  DCS then filed a dependency petition alleging Father had sexually abused J.M. and B.R., and Mother had failed to protect J.M. and B.R. after learning about the abuse.  DCS filed a separate dependency petition concerning S.R. and M.M.  The court granted a dependency for J.M. and B.R. but dismissed the dependency as to S.R. and M.M.  B.R. was dismissed from the dependency when she turned 18.

2

**¶4**        In October 2017, DCS moved to terminate Mother's and Father's parental rights on the grounds of willful abuse or failure to protect a child from willful abuse and fifteen months' out-of-home placement pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2) and (8)(c). DCS also alleged the additional ground of nine months' out-of-home placement, § 8-533(B)(8)(a), as to Father, and asserted termination of both parents' rights was in J.M.'s best interests.

**¶5**        The juvenile court conducted an in-camera interview with J.M. in December 2017. Addressing the abuse, J.M. stated that Father had touched her inappropriately for about six or seven years; however, he stopped when "he figured out that I was on my period" and she knew he would not touch her again. J.M. stressed she wanted to return to her family and felt she would be safe returning home. J.M. also asserted that if the court did not allow her to be reunited with her parents, she would stay in foster care until she turns 18 because she will never consent to adoption.

**¶6**        The first day of the termination hearing was held in February 2018. In opening statements, J.M.'s attorney told the court J.M. had recanted her allegations that Father had abused her. As the hearing proceeded, the court admitted numerous exhibits offered by DCS, including police reports, audio and video interview files, and behavioral therapy reports. The court also heard testimony from two case workers who opined that termination was in J.M.'s best interests. After DCS rested its case, J.M.'s attorney informed the court that J.M. wanted to take the stand. The court granted J.M.'s request despite objections from DCS and ordered that transcripts of the court's in-camera interview be provided to the parties. On its own motion, given a concern that J.M.'s testimony might contradict what she had said during her in-camera interview, the court invited discussion on whether it should appoint a guardian ad litem ("GAL"). Although Appellants raised various objections, the court appointed a GAL, stating it was required to do so under A.R.S. § 8-221(I) and "[t]he fact that the [c]ourt did not do so prior to now does not change the statutory obligation."

**¶7**        The second day of the hearing took place in May 2018. J.M. testified that she missed her family and "would completely shut down" if she lost her weekly visit with Mother. She also reiterated that she "would never consent to an adoption" and stated it was not in her best interests to terminate Mother's and Father's parental rights because she would never see Mother again. J.M. was not questioned on direct or cross-examination regarding Father's abuse and did not recant her prior allegations of abuse.

¶8　　　　Neither parent testified at the termination hearing. During the parties' closing arguments, J.M.'s counsel opposed the termination, focusing primarily on best interests and noting many of the problems J.M. has experienced in her various foster care placements. In contrast, the GAL stated that she did not believe it is safe for J.M. to return to her parents' home and therefore argued that termination was in J.M.'s best interests. Outlining its reasoning on the record, the court found that DCS proved each of the grounds alleged in the motion for termination and that termination was in J.M.'s best interests. After the court entered written findings of fact and conclusions of law, Appellants timely appealed.

## DISCUSSION

¶9　　　　Appellants challenge the juvenile court's finding that DCS proved by a preponderance of the evidence termination is in J.M.'s best interests. "[T]he juvenile court is in the best position to weigh evidence and assess witness credibility;" thus, we do not reweigh the evidence and will affirm the termination order if the court's findings are supported by reasonable evidence and inferences. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016); *see also Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018).

¶10　　　　Termination is in a child's best interests if "the totality of the circumstances at the time of severance" establishes that the child will *either* benefit from the termination or be harmed if it is denied. *Alma S.*, 245 Ariz. at 150, ¶ 13. The juvenile court may consider a number of factors regarding the presence of a harm or benefit, including whether the child is likely to be adopted, *see Maricopa Cty. Juv. Action JS-500274*, 167 Ariz. 1, 6 (1990); will be freed from an abusive parent, *id.*; or an existing placement is meeting the child's needs, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998). However, the "child's interest in stability and security" must be the court's primary concern. *Alma S.*, 245 Ariz. at 150, ¶ 12 (quoting *Demetrius L.*, 239 Ariz. at 4, ¶ 15).

¶11　　　　The juvenile court acknowledged that whether termination was in J.M.'s best interests was a "more difficult" issue than whether DCS had proved a statutory ground for termination. Weighing various factors, the court noted the following: (1) adoption was unlikely because J.M. has many difficulties that need to be addressed; (2) J.M. testified she will not consent to an adoption; (3) J.M. is bonded to Mother and does not want the relationship to end; (4) J.M.'s current placement is meeting her needs; (5) Father sexually abused J.M. for years; (6) J.M. told Mother about the abuse but Mother did not believe her; (7) Mother still does not believe the abuse

happened; (8) Mother continues to live with Father; and (9) J.M.'s brothers pressured J.M. during prior visits and blamed her for ruining the family. The court concluded termination of Father's rights was in J.M.'s best interests because "there would be a detriment to having her continue a relationship with a person that sexually abused her for years." Similarly, the court explained that because Mother is still with Father, J.M. cannot return to live with Mother. Thus, the court found a continued relationship with Mother would harm J.M. and expose her to "the risk of emotional abuse."

¶12        Appellants argue the court erred because adoption is out of the question, given J.M.'s objection. Appellants rely on precedent stating that an appellate court will not affirm a best interests finding if the child is not adoptable and the ground for termination is an out-of-home placement. *See, e.g.*, *Yavapai Cty. Juv. Action No. J-9956*, 169 Ariz. 178, 180 (App. 1991) ("As a threshold matter, in order to terminate parental rights [for out-of-home placement], there must be evidence . . . the children are adoptable."). Assuming without deciding the continued validity of the cases on which Appellants rely after *Alma S.*, their argument is irrelevant because the juvenile court terminated Mother's and Father's rights pursuant to both § 8-533(B)(8) (out-of-home placement) and § 8-533(B)(2) (abuse of a child). *See Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 244 (App. 1988) (explaining the grounds of out-of-home placement were not intended to allow termination when the court "know[s] full well that the child is unadoptable," but then addressing "whether the evidence will support termination on the remaining ground"). Appellants do not contest the court's legal conclusions or findings of fact regarding the abuse ground. Because J.M.'s adoptability was just one of various factors under consideration, the court did not abuse its discretion in finding that termination is in her best interests notwithstanding her insistence that she will not consent to adoption. *See Alma S.*, 245 Ariz. at 150, ¶ 13.

¶13        Mother separately argues the juvenile court failed to comply with *Ruben M. v. Arizona Department of Economic Security*, 230 Ariz. 236 (App. 2012), which held that the court's two legal conclusions in a termination hearing (statutory grounds and best interests) must be sufficiently supported by at least one factual finding. *Id.* at 240, ¶ 22. In *Ruben M.*, the juvenile court found "termination would provide the children 'with a safe, stable environment,' and they 'would suffer a detriment if Father's rights were not terminated because it is likely that they 'would continue to be abused or harmed by Father.'" *Id.* at 241, ¶ 27. On appeal, we concluded these findings were sufficiently specific to support the juvenile court's legal conclusion that termination was in the best interests

of the children. *Id.* at ¶ 28. Here, the court found termination removed "the risk of emotional abuse" to J.M. that would continue if Mother's rights were not terminated. Contrary to Mother's argument, the court's finding concerning a risk of emotional abuse is analogous to the findings in *Ruben M.* Moreover, the court's findings on the abuse ground support the court's best interests findings because they establish Mother's parental unfitness. *See Alma S.*, 245 Ariz. at 150, ¶ 10. For example, the court found that Mother was aware "there had been reports by the children of the sexual abuse by [Father] and [she] did not do anything to protect the children."

¶14 Mother also argues that "[n]othing in the record supports a finding of past or present emotional abuse." She directs us to A.R.S. § 8-201(2), which defines "abuse" for purposes of Title 8 and provides several examples of conduct constituting abuse of a child. But Mother cites no authority suggesting a juvenile court's consideration of a detriment to the child is limited to this statutory definition when it evaluates the totality of the circumstances affecting the child's best interests. Moreover, Mother does not challenge the admitted exhibits from J.M.'s mental health providers diagnosing her with mental health issues and detailing her continual emotional struggle to recover from Father's abuse. Instead, Mother argues the exhibits do not prove the abuse "was caused by the acts or omissions of Mother while [J.M. was] in [her] care, custody, and control." Mother's argument fails to acknowledge the juvenile court's finding that she failed to protect J.M. from abuse, which she has not challenged on appeal. On this record, reasonable evidence supports the court's finding that a continued parent-child relationship with Mother would create "a risk of emotional abuse."

¶15 Finally, Mother contends termination deprives J.M. of a functioning familial unit, asserting the juvenile court erred by turning J.M. into a "'legal orphan' against her wishes." Given J.M.'s age, Mother argues J.M.'s wishes are "fundamental as a matter of law." The existence of a bond and J.M.'s wishes are factors the court should consider as a part of the totality of the circumstances, but neither is dispositive. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 30 (App. 2013); *cf.* A.R.S. § 25-403(A)(4) (listing the child's wishes as one of eleven factors to consider in the best interests analysis for legal decision-making and parenting time). Here, the court explicitly considered that J.M. "loves her mother. She has a relationship with her mother. She doesn't want that to end." Nevertheless, the court concluded termination of Mother's parental rights is in J.M.'s best interests because a continued parent-child relationship exposed J.M. to harm. Recognizing that we do not "reweigh the evidence or substitute our judgment for that of the juvenile court," *Bennigno R.*, 233 Ariz. at 351, ¶ 31,

we conclude that reasonable evidence supports the court's finding that termination is in J.M.'s best interests.

**CONCLUSION**

¶16          We affirm the juvenile court's order terminating Mother's and Father's parental rights to J.M.

