NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

ROARKE T., *Appellant*,

*v.*

SARA K., M.T., *Appellees*.

No. 1 CA-JV 22-0061
FILED 7-14-2022

Appeal from the Superior Court in Maricopa County
No. JS519833
The Honorable Cynthia L. Gialketsis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Owens & Perkins P.C., Scottsdale
By Michael Joseph Clonts
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**F U R U Y A**, Judge:

**¶1**         Roarke T. ("Father") appeals the superior court's order terminating his parental rights to his son ("Child"). For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**         Father and Sara K. ("Mother") are the biological parents of Child. Father has struggled with substance abuse since he was 14. Mother and Father began a relationship in 2011, and Child was born to them in August 2012. Though Father was present at Child's birth and lived with Mother and Child for a few months thereafter, Father's and Mother's relationship ended in 2012. During 2012 and 2013, Father visited Child on holidays and birthdays.

**¶3**         Mother thereafter met and began a relationship with Preston K. ("Stepfather") in 2013 when Child was five months old. Stepfather joined Mother's and Child's household in 2015. Child called Stepfather "dad" as soon as he could speak. Stepfather considers Child his son. Over the following years, Stepfather was present for many of Child's important developmental milestones and involved Child in many mutual activities over which they have regularly bonded, such as fishing, family trips, martial arts, sports, and swimming. Together with Mother, Stepfather shares regular, consistent, and significant parenting duties regarding Child, such as giving advice, helping with schooling, teaching skills, and disciplining. Mother and Stepfather married in March 2021, where Stepfather named Child as his "best man."

**¶4**         Father's interactions with Child during this same timeframe have been quite different. After their relationship ended in 2012, Father did not regularly contact Mother to inquire about the well-being of Child. In 2013, Father was sentenced to prison for a drug offense and burglary charge. Between 2013 to 2015, Father had between 30 and 40 visits with Child. From 2015 until 2017, Father was incarcerated and did not contact

Mother regarding Child during his incarceration. While incarcerated, Father participated in numerous self-improvement programs, including parenting and substance-abuse programs.

**¶5** After his release in 2017, Father had one visit with Child at a park for a couple of hours in the Fall of that year. This was the last time Father saw Child face-to-face. Father began using drugs again in 2020 and was arrested for drug possession in October 2020. He was arrested again in March of 2021 for criminal trespass, drug possession, assault, and domestic violence. Father has been incarcerated since May 2021 and will not be released until March 2023. As of the date of trial, Father had not taken any rehabilitative programs during his most recent incarceration.

**¶6** In April 2021, Mother filed a private petition to terminate Father's parental rights to Child based upon abandonment and prolonged substance abuse grounds and alleged that the termination was in Child's best interests because Stepfather wanted to adopt Child. The juvenile court held a contested trial on Mother's Termination Petition in December 2021. Licensed social worker, Polly Thomas, authored the social study and testified that termination was in Child's best interests.

**¶7** Father testified he had been sober for eight months and was committed to a sober lifestyle. He further testified that he had a sponsor and planned to go to a sober living home upon his release in 2023.

**¶8** Father also testified to numerous acts by Mother that he believed interfered with his relationship with Child. He testified that he sent letters, pictures, and a poem to Child's paternal grandfather for Child that Mother did not show to Child. Mother testified that she did not receive any of these items, except for two letters sent in October 2021. After Father's release from incarceration in 2017, Father testified that Mother prevented him from seeing Child for six months until he had proven he was sober. During Father's last visit with Child in 2017, Mother would not allow Father to tell Child he was his father. And following his final visit, Father testified he attempted multiple times to have more visitation with Child, but Mother did not return his calls. Mother reported that Father called at unreasonable hours late at night and appeared to be under the influence.

**¶9** After taking the issue under advisement, the juvenile court granted Mother's petition to terminate Father's parental rights based on the abandonment grounds, finding that termination was in Child's best interests. *See* A.R.S. §§ 8-531(1), -533(B)(1).

**¶10**        We have jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. 103–04.

## DISCUSSION

**¶11**        To terminate parental rights, the juvenile court must find by clear and convincing evidence that at least one statutory ground provided for in A.R.S. § 8-533(B) has been proven and must additionally find by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005).

**¶12**        On appeal, Father challenges only the court's best interests finding, arguing the court abused its discretion by finding the termination of Father's rights served Child's best interests. Essentially, Father disputes that sufficient evidence supports the court's best-interests findings.

**¶13**        Resolving conflicting evidence is "uniquely the province of the juvenile court, and this rule applies even when sharply disputed facts exist." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (citations omitted). Such deference is justified because the juvenile court is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted). Thus, we will "accept the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a severance order unless it is clearly erroneous." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). We do not reweigh the evidence. *Alma S.*, 245 Ariz. at 151, ¶ 18 (citing *State v. Fischer*, 242 Ariz. 44, 52 ¶ 28 (2017)).

**¶14**        "A determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Thus, either benefit to the child from termination or harm to the child from continuing the relationship will independently support a best-interests finding. *Demetrius L.*, 239 Ariz. at 4, ¶ 16.

**¶15**        Here, the juvenile court first determined Father unfit on the grounds he had abandoned Child. Father does not challenge this determination on appeal, and we do not address it further. Having found Father unfit, the court then found that because Child is adoptable and Stepfather desires to adopt him, termination of Father's parental rights was in Child's best interests.

¶16        Father contends that the juvenile court erred by failing to "consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S.*, 245 Ariz. at 148, ¶ 1. Father argues the court only considered Child's adoptability and did not consider his rehabilitation efforts or Mother's interference with his and Child's relationship. But Father's arguments in this regard are unavailing.

¶17        First, although Father claims the court failed to consider his efforts at rehabilitation, the court specifically discussed those efforts in its extensive ruling. After meticulously recounting and evaluating evidence of those rehabilitation efforts, the court held Mother failed to prove by clear and convincing evidence Father was unfit due to prolonged substance abuse grounds. *See* A.R.S. § 8-533(B)(3). Thus, Father's allegation that the court did not consider his rehabilitative efforts is baseless.

¶18        Father's other contention that the court failed to consider Mother's interference with his relationship with Child is likewise groundless. The court expressly discussed such evidence in its order, so the argument that the court failed to consider it is also without merit.

¶19        Second, having considered the totality of the circumstances in its order, adoptability alone was sufficient to support the court's best-interests finding. As our supreme court explained:

> A child may [] reap benefits from adoption, warranting a best-interests finding primarily on that basis . . . .
>
> Adoption obligates the adopting parent legally and financially to the child. Adoption also solidifies the adopting parent's right to exercise custody and control of the child in the future, serving to advance the child's wellbeing. An adopted child also stands to inherit from the legal, adopting parent, without losing his or her rights to inherit from the other natural parent whose rights are severed. In sum, depending on the circumstances, adoption can provide sufficient benefits to support a best-interests finding in private and state severance actions alike.

*Demetrius L.*, 239 Ariz. at 4–5, ¶¶ 16–17 (citing statutes and cases) (cleaned up). Thus, although "courts should consider a parent's rehabilitation efforts as part of the best-interests analysis," *Alma S.*, 245 Ariz. at 151, ¶ 15, adoptability alone can, under appropriate circumstances, fully support a best-interests finding sufficient to justify termination. *See Id.* at 151, ¶ 14

(observing the court of appeals erred in stating that adoptability alone can never support a best-interests finding). Such is the case here.

¶20 As already noted, the record in this case reflects that the court did consider Father's rehabilitation efforts, as well as Father's evidence and arguments that Mother interfered with his and Child's relationship. Nevertheless, the court found Child "would benefit from termination because he has a bonded relationship with [S]tepfather who desires to adopt [him]. Stepfather has been actively involved in parenting Child for most of his life, and the adoption would provide stability and permanency for Child." Reasonable evidence in this record supports these findings. We hold that Child's adoptability alone is sufficient to sustain the juvenile court's best-interests finding in the termination order. *Demetrius L.*, 239 Ariz. at 3, ¶ 9. Thus, we need not address Father's other arguments challenging the court's finding that the continuation of his relationship with Child was detrimental.

## CONCLUSION

¶21 The juvenile court's order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

6