NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

UZOMA N., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.N., *Appellees.*

No. 1 CA-JV 22-0136
FILED 10-25-2022

Appeal from the Superior Court in Maricopa County
No. JD39478
The Honorable Suzanne Scheiner Marwil, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Vice Chief Judge David B. Gass joined.

---

**B A I L E Y**, Judge:

¶1   Uzoma N. ("Father") appeals the termination of his parental rights to C.N. ("the child"). He argues the Department of Child Safety ("DCS") provided insufficient evidence that termination was in the child's best interests. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2   Father is the biological father of the child, who was born in January 2019. In 2020, DCS received a report of domestic violence between Father and the child's mother ("Mother").[1] During an argument, Mother threw Father's phone outside the house and, upon being locked out, Father threw a rock "about the size of a football" through the dining room window. Neighbors called police, who notified DCS. Mother told DCS that Father had been hitting and choking her, throwing her to the ground, and pushing her into cabinets. Mother also told DCS that the child was within three feet of the window when Father shattered it.

¶3   In June 2020, DCS filed a dependency petition alleging Father was unable to parent due to neglect and domestic violence against Mother. In July 2020, the superior court found the child dependent as to Father and adopted a family reunification case plan. DCS offered Father team decision meetings, case management, individual counseling, parent-aide services, supervised visits, and substance abuse treatment.

¶4   In August 2021, the court changed the case plan to severance and adoption. In October 2021, DCS moved to terminate Father's relationship with the child on grounds of abandonment and six-, nine-, and fifteen-months' time-in-care. A contested termination adjudication was held over two days, in March and May 2022.

---

[1]  Mother is not a party to this appeal.

**¶5**    The child's maternal grandmother ("Grandmother") testified that the child had been "living with [Grandmother] with the help of his parents since birth." Following the child's placement with Grandmother in June 2020, Father visited about once a month for fifteen minutes at a time to "hold the baby [and] play with the baby." Father provided no financial support for the child or Grandmother. Father also showed no interest in "raising the child" or doing mundane tasks such as diaper changing. Grandmother also testified that Father once left the child in a locked car and that police were called to break the car window to get the child out.

**¶6**    Grandmother testified she is a licensed foster parent and willing to adopt the child. She also testified that she would be willing to allow Father to visit the child if the court terminated Father's rights.

**¶7**    The DCS case manager testified that the child's placement with Grandmother was adoptive and that the child was doing "extremely well" with her. The case manager also testified that the child would benefit by being removed from exposure to Father's domestic violence and would be harmed by further exposure to it.

**¶8**    The superior court terminated Father's rights to the child on the grounds of abandonment and six-, nine-, and fifteen-months' time-in-care. The court found that Father, despite occasionally visiting the child, provided "no meaningful support for the child" and left all parenting duties to Grandmother. The court also found that the child was under three years old when the termination motion was filed, that DCS had offered appropriate services, and that Father had substantially neglected to remedy the circumstances that led to the child's foster placement with Grandmother. The court also found that the child was in an adoptive placement, that Father "appears to disdain caregiving," and that Father conceded "nothing would change" about his relationship with the child if termination were granted. The court accordingly found termination was in the child's best interests.

**¶9**    We have jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 601 and 603.

## DISCUSSION

**¶10**    Father does not contest—and therefore waives—any challenge to the superior court's finding on the statutory grounds for termination. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1

3

(App. 2017) (by challenging only the best-interests findings, parents "abandon[] and waive[] any challenge to the court's finding of the statutory" grounds for termination). Instead, Father argues that DCS failed to meet its burden to establish that termination was in the child's best interests by a preponderance of the evidence.

¶11 "[W]e accept a superior court's findings of fact if reasonable evidence and inferences support them." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016). We will affirm a termination of parental rights unless it is "clearly erroneous." *Id.* (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000)). In proving that termination is in the best interests of the child, "DCS must show either that severance affirmatively benefits the child[] (such as showing [he is] adoptable or more stable in an existing placement), or eliminates a detriment to the child[]," if termination is not ordered. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016).

¶12 Father argues that the child will lack a "father-figure" if his rights are terminated and suggests this argument is relevant to the best interests review explained in *Demetrius L.* The Arizona Supreme Court's holding in *Demetrius L.*, however, is that "adoption can provide sufficient benefits to support a best-interests finding in private and state severance actions alike," was not premised on the availability of a "father-figure." 239 Ariz. at 5, ¶ 17 (describing benefits of adoption including financial obligation of the parent to the child, rights to custody, and inheritance from the adoptive parent). We find no merit in Father's argument.

¶13 Father also argues the court lacked sufficient evidence to find the child would suffer a continuing detriment through exposure to domestic violence. Here, Father admitted choking Mother, leaving scratches on her neck, and throwing a football-sized rock into his dining room window with the child in the home. The superior court had reasonable evidence that Father's continued rights to the child would cause a detriment, and to the extent that Father invites us to reweigh the evidence, even where "sharply disputed" facts exist, we decline. *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018) (quoting *Pima Cnty. Severance Action No. S-1607*, 147 Ariz. 237, 239 (1985)).

¶14 Father also urges us to consider his efforts to parent the child and the strength of the bond between him and the child. *See Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478, ¶ 33 (2022). But here, the court found that Father had made little effort to parent the child, and to the extent that Father floated on the periphery of the child's life, Grandmother said Father

was welcome to remain there. Reasonable evidence supported the superior court's findings that termination of Father's parental rights was in the child's best interests, and Father has shown no error.

**CONCLUSION**

¶15        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:     AA