NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.H.

No. 1 CA-JV 24-0156

FILED 04-22-2025

---

Appeal from the Superior Court in Maricopa County
No. JD42703
The Honorable Melody Harmon, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Veronica F. Rios, Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

---

**P A T O N**, Judge:

**¶1** Jayvon M. ("Father") appeals the termination of his parental rights as to K.H. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** We view the facts in the light most favorable to upholding the superior court's termination order. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20 (2000). Father and Stephanie C. ("Mother") are the biological parents of K.H., born in August 2022. In January 2023, Mother left K.H. with his maternal grandmother ("Grandmother"). Shortly thereafter, Grandmother filed a private dependency petition alleging that K.H. was dependent as to Mother. Grandmother did not list Father in the petition. Mother is not a party to this appeal.

**¶3** After receiving notice of the dependency, the Department of Child Safety ("DCS") identified Father as K.H.'s potential father and spoke with him three days before the initial dependency hearing. Father told DCS that he preferred K.H. remain with Grandmother because he did not believe he could parent K.H. at the time. DCS substituted in as petitioner at the initial hearing and filed an amended dependency petition alleging neglect as to Father.

**¶4** DCS referred Father for services, including supervised visitation, paternity testing, the Nurturing Parenting Program ("NPP"), and a rule-out drug test. Father began participating in the NPP in February 2023 and visited with K.H. through Grandmother and a DCS case aide. During his first visit with K.H., Father refused to debrief because he "did not want to come to the visitation." He also declined to complete homework from the NPP and did not work to find a job, reliable transportation, or a phone.

**¶5** In April 2023, Father established paternity as to K.H. In May 2023, the court found K.H. dependent as to Father, when he failed to attend a scheduled hearing, and adopted a case plan of family reunification. Father completed a drug test in which he tested positive for marijuana. A month later, Father voluntarily closed out of the NPP because he lacked the mental and emotional readiness to participate. He also chose to stop visitation with K.H.

**¶6** In September 2023, Father informed DCS he wanted to reengage in the case. DCS referred Father to the NPP and for visitation. Father reengaged in visitation with K.H., participating in 62 of 74 scheduled visits.

**¶7**         In December 2023, the court changed the case plan to severance and adoption.  DCS moved to terminate Father's parental rights to K.H. on the six-month out-of-home placement ground.  *See* A.R.S. § 8-533(B)(8)(b).  In April 2024, Father began the NPP for the third time.

**¶8**         The superior court held a termination trial over two days in May and July 2024.  In between the trial dates, DCS moved to amend its termination petition to add nine and fifteen months' out-of-home placement grounds.  *See* A.R.S. § 8-533(B)(8)(a), (c).  The superior court granted DCS's motion over Father's objection, and heard testimony from the DCS case manager, Father, and the case aide who oversaw Father's visits with K.H.

**¶9**         The superior court found DCS proved all three out-of-home placement grounds by clear and convincing evidence.  The court also found DCS proved by a preponderance of the evidence that K.H. would benefit from termination because "it would free him for adoption and would allow him the permanency he deserves."  As a result, the court terminated Father's parental rights to K.H.

**¶10**         Father timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") Sections 8-235(A), 12-120.21, and 12-2101(A)(1).

## DISCUSSION

**¶11**         Father only challenges the superior court's finding that termination was in K.H.'s best interests, specifically arguing the court failed to consider the totality of the circumstances in the case, including Father's young age, his consistent engagement in supervised visits since November 2023, the bond between him and K.H., his family support, and that he had stopped using marijuana.

**¶12**         Termination is in a child's best interests if the child will benefit from termination or if the child will be harmed if termination is denied.  *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018).  Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation."  *Id.* at 148, ¶ 1.  "When a current placement meets the child's needs and the child's prospective adoption is otherwise legally possible and likely, a [superior] court may find that termination of parental rights, so as to permit adoption, is in the child's best interests."  *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 12 (2016).  Finally, "[t]he existence and effect of a bonded relationship between a biological parent and a child, although

a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016). We will affirm the superior court's best interests findings if supported by reasonable evidence. *Id.* at 97, ¶ 7.

**¶13** The superior court found DCS proved by a preponderance of the evidence that terminating Father's parental rights was in K.H.'s best interests because K.H.'s needs were being met by his current placement, Grandmother, who intended to adopt him, and he was "thriving" in Grandmother's care. Father does not challenge these findings. Instead, he contends that the court did not consider the totality of the circumstances because it ignored the specific factors Father identified—including the parent-child bond and Father's young age—in its termination decision. But the superior court is not required to explicitly list every fact upon which best interests findings are based. *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451-52, ¶ 19 (App. 2007). Rather, the superior court is only obligated to make findings of ultimate facts. *See Elliot v. Elliot*, 165 Ariz. 128, 132 (App. 1990) (Findings must include "all of the 'ultimate' facts—that is, those necessary to resolve the disputed issues."). And while the factors Father identified, such as the parent-child bond, are relevant, none are dispositive. *See Dominique M.*, 240 Ariz. at 98, ¶ 12. Here, the court made express findings that K.H. would benefit from being adopted by Grandmother and that Grandmother intended to adopt the child. These findings are supported by the evidence and are sufficient to support the court's best interests determination. *See, e.g., Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572, ¶ 10 (App. 2018); *Demetrius L.*, 239 Ariz. at 4, ¶ 16. ("It is well established in state-initiated cases that [a] child's prospective adoption is a benefit that can support a best-interests finding."). Thus, the superior court's findings as to best interests were sufficient to support termination.

**CONCLUSION**

**¶14** We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR