NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO J.G. and D.G.

No. 1 CA-JV 25-0110

FILED 02-17-2026

---

Appeal from the Superior Court in Maricopa County
No. JD42580, JS22604
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Anna V. Vaszar
*Counsel for Appellee DCS*

Law Office of Lincoln Green Jr., PC, Scottsdale
By Lincoln Green
*Counsel for Appellee Child J.G.*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda Adams
*Counsel for Appellee Child D.G.*

---

## MEMORANDUM DECISION

Judge Anni Hill Foster delivered the decision of the Court, in which Presiding Judge David B. Gass and Chief Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

**¶1**        Isabella O. ("Mother") appeals the juvenile court's order terminating her parental rights as to her children, J.G. and D.G., for neglect, inability to care for the children due to mental health and time-in-care placement. She challenges the court's best-interests findings. This Court affirms.

### FACTS AND PROCEDURAL HISTORY

**¶2**        This Court views the facts "in a light most favorable to sustaining the juvenile court's findings." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2, ¶ 2 (2016).

**¶3**        J.G. and D.G. were born in March 2017 and January 2019, respectively. In December 2022, Phoenix Police received a report that Mother and the children were living in a home without a lease. Officers investigated and observed what they described as a hoarder's home. They contacted the Department of Child Safety ("Department"). The two agencies observed exposed fiberglass insulation and electrical wires, drugs, drug paraphernalia, alcohol bottles, weapons and evidence of fentanyl use throughout the home and in the children's room. The Department also observed that part of the ceiling was collapsing and transient people were coming in and out of the house regularly.

**¶4**        The Department reported that Mother told them that J.G. suffered from leukemia and seizures and that D.G. had stomach cancer and was autistic. Both children were taking medication, but the Department noted all the medication in the home had expired. The Department further noted that Mother reported experiencing depression. Based on these circumstances, the Department immediately removed the children from Mother's care.

**¶5**        Following immediate removal, the Department petitioned for formal removal and dependency alleging both children were dependent due to neglect, living in an unfit home and Mother's mental illness. After a

hearing on the Department's petition, the juvenile court found both children dependent as to Mother, granted custody of the children to the Department and adopted a reunification plan.

¶6 The reunification plan included a referral for Mother to several services, including drug treatment, a psychological evaluation, a parenting program, clinically supervised visits, housing resources and transportation services. The court acknowledged Mother initially participated in these services and showed some improvement. However, Mother did not maintain her progress and showed a consistent cycle of regression throughout the dependency proceedings and leading up to trial. Mother failed to maintain consistent housing and employment. She also failed to address her mental health and meet the children's needs during supervised visits. The Department consistently reminded Mother she needed to engage in and complete services before reunification with the children.

¶7 While Mother participated in reunification services, the Department conducted a search for acceptable kinship placement for both children. After failing to find an appropriate kinship placement, the Department placed the children in foster care. Because Mother reported the children each suffered from substantial medical needs, the Department placed the children in separate foster homes to ensure they received adequate care.

¶8 While in their respective foster homes, each child's evaluating doctor questioned the validity of the children's reported medical conditions. A review of the children's health records and medical testing revealed neither child had cancer, was autistic nor had life-threatening allergies. Moreover, during the two-year dependency, no one observed J.G. experience a seizure, despite Mother's claim he suffered from seizures two to three times a week before removal.

¶9 The Department retained custody of both children for two years. During that time, Mother failed to make significant improvements to reunite with the children. Thus, the Department moved to terminate her parental rights in December 2024. Mother opposed the termination and requested a trial. Accordingly, the juvenile court held an evidentiary hearing on Mother's parental rights and in July 2025, the juvenile court terminated her rights based on neglect, mental illness and out-of-home placement.

**¶10** Mother timely appealed, and this Court has jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶11** Mother argues that under the totality of the circumstances, termination of her parental rights was not in the children's best interests because the Department separated the children upon removal and they will likely be adopted into separate homes, severing their sibling relationship.

**¶12** This Court "accept[s] the juvenile court's findings of fact if reasonable evidence and inferences support them, and will affirm a [termination] order unless it is clearly erroneous." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151, ¶ 18 (2018). Because Mother does not challenge the statutory grounds for termination, she waives any challenge to the juvenile court's findings of neglect, § 8-533(B)(2), mental illness, § 8-533(B)(3) and out-of-home placement, § 8-533(B)(8)(c). *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 1 (App. 2017) (by challenging only the best-interests findings, mother "has abandoned and waived any challenge to the court's finding of the statutory" grounds for termination). And since statutory grounds for termination exist, this Court reviews only whether a preponderance of the evidence supports the court's ruling that termination was in the children's best interests. *See* A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). If reasonable evidence supports the juvenile court's order, this Court will affirm. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (citation omitted).

**¶13** The record supports the juvenile court's findings that termination is in both children's best interests. Evidence showed that the children had been in out-of-home placement for over two years. Evidence also showed that during that time the children developed emotionally, progressed academically and bonded with their foster families. But the court appropriately weighed these factors against the children's bond with Mother and one child's preference to reunify with Mother.

**¶14** The record supports the court's finding that continuation of the parent-child relationship would be a detriment to both children. The testimony and exhibits showed that the possibility of future reunification would be unlikely in the near future. Evidence also showed that continuing the reunification plan would extend the uncertainty and emotional toll of the situation that was a detriment to the children. Additionally, the fact that the children had lingered in foster care for a prolonged period supports the court's findings.

¶15      Finally, the juvenile court appropriately acknowledged the children's separate placements weighed against termination. But children's separate placements were the result of Mother's fictitious reports of their medical fragility. Moreover, DCS reported that both placements, while open to accommodating the children living together, "expressed concerns that both siblings show regression in behaviors they have otherwise improved with when they are together." After considering the totality of circumstances, this Court discerns no error. Mother's appeal asks this Court to reweigh the evidence and the effect of termination on the sibling relationship. This Court does not reweigh evidence. *Alma S.*, 245 Ariz. at 151, ¶ 18.

## CONCLUSION

¶16      This Court affirms.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:      JR