NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO K.L.

No. 1 CA-JV 24-0015
FILED 06-04-2024

Appeal from the Superior Court in Yavapai County
No. P1300JD202200017
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Toni M. Valadez, Dawn Rachelle Williams
*Counsel for Appellee Department of Child Safety*

Robert D. Rosanelli, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Andrew M. Jacobs delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge David D. Weinzweig joined.

**J A C O B S**, Judge:

¶1          Alexis S. ("Mother") appeals the juvenile court's termination of her parental rights over her daughter, K.L.  Mother concedes the presence of two grounds for termination:  (1) the chronic abuse of dangerous drugs and reasonable grounds to believe the condition will continue for a prolonged indeterminate period under A.R.S. § 8-533(B)(3); and (2) fifteen-month out-of-home placement and a substantial likelihood the parent will not be capable of exercising proper and effective parental care and control in the near future under A.R.S. § 8-533(B)(8)(c).  Mother appeals the juvenile court's finding that termination is in K.L.'s best interests.  Because reasonable evidence supports that finding, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2          K.L. was born to Mother and Steven L. ("Father") in March 2012.[1]  Mother abused dangerous substances from around the time of her birth.  The record reflects Mother's abuse of opiates, methamphetamine, heroin, and fentanyl.  This chronic use of dangerous drugs has led child protection authorities in both Colorado and Arizona to intervene in her relationship with K.L.

¶3          A Colorado court found K.L. dependent after a February 2019 incident in which Father was arrested with methamphetamine in his car while Mother was incarcerated.  Mother used substances again during this dependency, and was initially hesitant to reunify with K.L., although she ultimately engaged in services provided by Colorado Child Protective Services.

¶4          In February 2022, Mother drove K.L. from Colorado to Arizona so Mother could be treated for her addictions to fentanyl, methamphetamine, and heroin.  On the way to Arizona, Mother pulled over repeatedly to get high, then passing out, while K.L. waited for her to regain consciousness.  Once in Arizona, Mother and K.L. stayed at a hotel in Prescott.  Police there responded to a report that Mother had assaulted a fellow hotel guest, and had to restrain Mother when she became aggressive.  Police then searched Mother's room and found methamphetamine and heroin where they were accessible to K.L.

¶5          After the events in Prescott, the State charged Mother with possession of dangerous drugs, possession of drug paraphernalia, assault, and child endangerment, and removed K.L. from Mother's care.  Mother

---

[1] Father's parental rights were previously terminated.  He is not a party to this appeal.

pled guilty to child abuse and possession of drug paraphernalia receiving probation while K.L. was placed in a group home.

¶6            While the Department of Child Safety ("DCS") created a reunification plan calling for Mother to become a safe, sober, and stable parent, Mother was unable to complete the plan.  Mother did not complete a single service.  She submitted only a quarter of the required urinalysis, and when she did, she was positive for amphetamines and fentanyl. Mother was repeatedly kicked out of substance-abuse treatment facilities, for bringing methamphetamine and fentanyl to a facility and having sex with facility workers, and also for bullying and noncompliance.  She was repeatedly arrested and repeatedly used substances in jail.  After DCS moved to terminate her parental rights, Mother left a substance-abuse facility because she did not want to obey its "male restriction" guideline. While DCS's motion to terminate was pending, Mother used fentanyl while visiting K.L.  Mother agreed at her severance trial that she could not safely parent K.L.

¶7            At the severance trial, DCS's case manager testified K.L. was "absolutely" adoptable and that DCS would "absolutely" be able to place her, noting that she is "wonderful," has good grades, is "funny . . . sweet . . . [and p]eople who are around [her] all love her."  K.L. has remained fond of Mother, but eventually decided she did not want reunification because of her Mother's continued struggles, and wrote Mother asking for her understanding of K.L.'s preference to be adopted, even offering to remain in contact with Mother.

¶8            On December 26, 2023, the juvenile court terminated Mother's parental rights, making these findings:

> The Department has proven by a preponderance of the evidence that the termination of the parent-child relationship would serve the best interest of the child.  Termination of the relationship would benefit the child because it would further the plan of adoption, which would provide the child with permanency and stability.  [K.L.] is not currently in an adoptive placement, but she is adoptable and DCS is making efforts to locate an adoptive placement. [K.L.] deserves safety and stability which her parents have not been able to provide her despite being involved in dependency cases in two different states.  [K.L.] loves her parents but wrote letters to her parents letting them know that she wants to be adopted. Continuation of the parent-child relationship would be a

detriment to the child because it would delay permanency, requiring [K.L.] to linger in care for an indeterminate amount of time since she does not have parents who are able to care for her. (cleaned up)

¶9　　　　Mother timely appealed.  We have jurisdiction.  A.R.S. §§ 8-235, 12-120.21, and 12-2101(A)(1); Ariz. Const. art. 6, § 9.

## DISCUSSION

¶10　　　　We review a juvenile court's best interests findings for an abuse of discretion and reverse only if there is "no reasonable evidence to support [the findings]." *Mary Lou C. v. Arizona Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004) (citations omitted).  When considering the child's best interests, the court must consider the totality of the circumstances, which includes the child's stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶¶ 12-13 (2018).  The State may show that severance is in a child's best interest by showing either that they are adoptable or in an adoptive placement. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 12 (2016).

¶11　　　　Mother argues that K.L. has not yet been adopted, leaving her without the security and stability that is the primary concern of the juvenile court in a best interests analysis. *Alma S.*, 245 Ariz. at 150 ¶ 12 (explaining that the court's primary concern is "the child's interest in stability and security.") (cleaned up).  But whether the child has yet been adopted does not control the analysis – the child's adoptability does. *Demetrius L.*, 239 Ariz. at 4 ¶ 12.  There is reasonable evidence that K.L. is adoptable, both in the opinion of the DCS case worker, and testimony that she is "funny" and "sweet" and that "people . . . all love her."  Mother does not argue to the contrary.  And while Mother notes that K.L. has at times stated a desire to be reunited with her, K.L. has also expressed directly to Mother and repeatedly to her case worker that she wishes to be adopted.  Thus, there is reasonable evidence that adoption is in K.L.'s best interest.

## CONCLUSION

¶12　　　　We affirm.

