NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

## IN RE TERMINATION OF PARENTAL RIGHTS AS TO A.S. and A.S.

No. 1 CA-JV 24-0108

FILED 03-04-2025

---

Appeal from the Superior Court in Maricopa County
No. JD33226
The Honorable Gregory Como, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Michael J. Brown joined.

---

**M c M U R D I E**, Judge:

¶1        Ashanti W. ("Mother") appeals the termination of her parental rights to her daughters Amy (born in 2011) and Ava (born in 2012).[1] We find no error with the termination for Ava. For Amy, however, the juvenile court misconstrued the law and the facts about her best interests. Thus, we affirm the termination order for Ava but vacate and remand as to Amy.

## FACTS AND PROCEDURAL BACKGROUND

¶2        In early 2020, the Department of Child Safety took custody of the children based on reports of abuse and neglect at their father's home.[2] At that point, Mother had not parented the children in years, and her whereabouts were unknown.

¶3        The Department located Mother later in 2020. The Department then offered Mother years of reunification services, including drug testing, mental-health treatment, and visitation. But Mother minimally participated in the services, continued to use drugs, and made little effort to maintain a relationship with the children.

¶4        Meanwhile, Ava and Amy were placed in a foster home together. Ava thrived there and never left. Amy, by contrast, had little stability because of behavioral struggles. In mid-2021, the Department moved Amy to a therapeutic foster home after she got "physical with [her] placement." Then, in mid-2022, she was moved to a qualified residential treatment program after self-harming and damaging property. Soon after, she threatened to kill a peer and was moved to a group home for children with significant trauma, where she continued to be verbally and physically aggressive. She was next moved to a second qualified residential treatment program but was removed after a conflict with the police. She then stayed in an inpatient behavioral health facility for more than a year, where she continued to harm herself, others, and property. Upon her removal from inpatient care to a third qualified residential program in late 2023, she threatened homicide. She was moved to a therapeutic foster home in early

---

[1]        We use pseudonyms to protect the children's identities.

[2]        The children's father's rights were terminated concurrent with Mother's, but he is not a party to this appeal.

2024 but returned to inpatient care only a few months later after attempting suicide.

**¶5** In mid-2023, the Department proved grounds to terminate Mother's rights to Ava based on Mother's substance abuse under Arizona Revised Statutes ("A.R.S.") § 8-533(B)(3) and the child's time in care under § 8-533(B)(8)(c). But the juvenile court concluded the Department failed to prove statutory grounds to terminate the father's rights. As a result, the court declined to terminate Mother's rights on best-interests grounds because termination would not free Ava for adoption. The court also found preserving Mother's rights allowed for the possibility that Mother could become sober and capable of care.

**¶6** The Department again sought termination for both parents and children in late 2023 and early 2024. The matter went to trial in mid-2024. The juvenile court granted the motion to terminate in whole. As to Mother, the court found the Department proved grounds to terminate her rights to the children based on substance abuse under A.R.S. § 8-533(B)(3), time in care under § 8-533(B)(8)(c), and abandonment under § 8-533(B)(1). The court also found termination was in the children's best interests because Mother's continued substance abuse made reunification improbable, and freeing the children for adoption offered them a chance of permanency and stability, and prolonging their time in care would harm their adoption prospects as well as their mental health.

**¶7** Specific to Ava, the court found she was closely bonded to her long-term adoptive placement and shared the placement's desire for adoption. Acknowledging that "[w]ith [Amy], perhaps the situation isn't quite as clear," the court stated that "the whole idea that we have to decide whether a child is adoptable or not seems rather bizarre to me in some ways. In my view, almost any -- any child is adoptable." The court found that despite Amy not being in an adoptive placement, she was adoptable because she was happy, relatively young, and, despite her behavioral struggles, had no history of criminal behavior or violence. The court determined: "[Amy]'s had her share of mental health issues and continues to, but there are children being raised by parents all over the country with mental health issues, and they have good relationships with their parents and with their siblings, and I don't see any reason why [Amy] can't be in that same situation."

**¶8** Mother appealed. We have jurisdiction under A.R.S. §§ 8-235(A) and 12-120.21(A)(1).

**DISCUSSION**

**¶9**       Parental rights must not be terminated absent proof by clear and convincing evidence that termination is warranted under A.R.S. § 8-533(B), and proof by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005); A.R.S. § 8-863. We defer to all factual findings supported by reasonable evidence but review legal issues *de novo. Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579-80, ¶ 10 (2021).

**¶10**       Mother challenges only the juvenile court's best-interests determinations. The best-interests inquiry focuses on the child's interest in stability and security. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018). Termination will serve the child's best interests if he or she would benefit from termination or be harmed by its denial. *Id.* at 150-51, ¶ 13. The court must consider the totality of the circumstances. *Id.* Relevant factors may include whether the parent has made rehabilitation efforts, whether the child's needs are being met in his or her placement, whether an adoption plan exists, and whether the child is adoptable. *Id.* at 151, ¶¶ 14-15; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3-4, ¶ 12 (2016). But evidence of an adoption plan or adoptability must show that adoption "is not only possible, but likely." *Titus S. v. Dep't of Child Safety*, 244 Ariz. 365, 370, ¶ 22 (App. 2018). The adoption showing must be specific to the child—"[i]f theoretical adoptability is sufficient to establish best interests, the inquiry becomes perfunctory." *Id.* at 370, ¶ 19. "If 'adoptable' merely means that someone, somewhere, would be willing to adopt the child, then all children, given their unique dignity as human beings, and the unbounded capacity of some adults to accept and love any child, may be said to be 'adoptable.'" *Id.*

**¶11**       The juvenile court misconstrued the adoptability standard when considering Amy's best interests. The court's remarks about the hypothetical adoptability of all children and the ability of other parents to meet other children's mental-health needs contradicted the required case-specific assessment. Moreover, even if the court properly considered Amy's circumstances, its finding that she had no history of criminal or violent behavior was unsupported. The evidence showed Amy threatened to kill others many times and often harmed herself, others, and property. On appeal, the Department concedes it is impossible to know whether the court would have found termination to be in Amy's best interests without its unfounded underestimation of the nature and severity of her behaviors. We agree. *See Ellesse J. v. Dep't of Child Safety*, 1 CA-JV 17-0182, 2017 WL 6376362, at *6, ¶¶ 26-30 (Ariz. App. Dec. 14, 2017) (mem. decision) (We will

not affirm a termination where we cannot discern the extent of an erroneous finding's effect on the juvenile court's best-interests determination.). We must vacate the termination order for Amy based on the juvenile court's misapprehension of the law and the facts.

¶12        As to Ava, however, we detect no error. For Ava, the juvenile court based its best-interests determination on case-specific findings supported by the evidence. Specifically, the court correctly found Ava would benefit from termination because she was closely bonded to a long-term placement that planned to adopt her. The court also found continuing Mother's parental relationship would harm Ava because of Mother's consistent unwillingness or inability to achieve sobriety, and preserving the parental relationship would prolong Ava's time in care to the detriment of her adoption prospects and mental well-being. We affirm the termination order as to Ava.

## CONCLUSION

¶13        We affirm the termination of Mother's parental rights to Ava. We vacate the termination order for Amy and remand for a new termination trial.

