NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.N.

No. 1 CA-JV 24-0168

FILED 04-29-2025

Appeal from the Superior Court in Maricopa County
No. JS22113
The Honorable Pamela S. Gates, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Mother*

Gillespie, Shields & Taylor, Mesa
By Mark A. Shields, Robert O. Newell
*Counsel for Appellee Father*

_____

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Anni Hill Foster and Judge Paul J. McMurdie joined.

_____

**B R O W N**, Judge:

¶1        Melissa O. ("Mother") appeals the juvenile court's order terminating her parental rights to her son S.N.  For the following reasons, we affirm.

## BACKGROUND

¶2        Mother and Tyler N. ("Father"), who were never married, are the parents of S.N., born in 2010.  After Father and Mother's relationship deteriorated, they entered into a partial agreement for custody and parenting time in August 2012.  Over the next few months, Mother had supervised visits with S.N. about once a week.  In January 2013, the family court entered an order, based on the parents' stipulation, addressing custody, parenting time, and child support ("2013 Order").  The joint custody and parenting time provisions would "only take effect upon [Mother's] presentment of six consecutive, on-schedule negative and undiluted drug tests."  If Mother completed "six consecutive clean, timely and undiluted drug tests," she and Father would exercise "joint legal custody" over S.N.  Mother was ordered to pay Father a reduced child support amount of $50 per month.

¶3        Mother never completed the requisite drug tests.  According to Mother, transportation concerns and her mental health struggles resulted in the completion of only two tests, both of which she failed.  Mother's last contact with S.N. was in 2012, and she never paid child support.  Mother did not seek to modify the 2013 Order or otherwise attempt to exercise her parental rights in family court.

¶4        Father began living with his girlfriend ("Jessica") in 2012, and the two married in 2014.  In 2024, Jessica told Mother she wanted to adopt S.N. and asked Mother to relinquish her parental rights voluntarily.  After Mother refused, Father petitioned to terminate Mother's parental rights based on abandonment.  *See* A.R.S. § 8-531(1); -533(B)(1).

¶5        At the subsequent termination adjudication hearing, Mother testified that throughout their relationship, Father was verbally and

physically abusive. S.N.'s maternal grandmother also testified that she witnessed abusive behavior from Father, and that he had threatened Mother; S.N.'s maternal aunt corroborated Mother's claim that Father was verbally abusive. S.N.'s paternal grandmother testified that in September 2023, either S.N. or his half-sister had said that Father had choked and kicked S.N. The paternal grandmother also said there was an incident in October 2023 where S.N. ran away from home, came to her house, and said he was "always" terrified of Father. During Father's testimony, he denied physically or emotionally abusing Mother or S.N. and noted that a DCS investigation found the allegations made in September 2023 were unsubstantiated. Jessica likewise denied witnessing Father acting abusively toward S.N.

¶6        Mother testified that she tried contacting Father several times to contact S.N. but failed. She described an attempt in 2015 where one of her relatives tried to contact Father, who told the relative that Mother and her family would never see S.N. again. Mother also explained that she requested to speak with S.N. when Jessica contacted her in 2023, but the request was denied. Father and Jessica denied such attempts at contact.

¶7        Polly Thomas, a licensed clinical social worker, testified about the social study she prepared, which was admitted into evidence. Thomas testified that she had interviewed S.N. and determined he was safe in Father's home. She also testified that (1) Jessica was "instrumental in establishing a safe and caring home environment," (2) she has been involved in S.N.'s education and community participation, and (3) S.N. wanted her to adopt him.

¶8        The juvenile court determined Father proved that Mother abandoned S.N. by clear and convincing evidence "as defined by Arizona law." The court acknowledged Mother's personal challenges but explained it was obligated under the law "to evaluate a parent's actions to assess whether the parent failed to maintain a normal parental relationship with a child without just cause." The court found there was no just cause for Mother's failure to "maintain any relationship with [S.N.] for the last ten years," explaining that after she failed to complete the necessary drug tests, Mother did not attempt to modify parenting time orders, provide her son with financial support, or send cards, gifts, or letters. The court also found that termination was in S.N.'s best interests, explaining that S.N. wants to be adopted by Jessica and that adoption would give him "permanency and a sense of security." The court terminated Mother's parental rights. Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

¶9            Mother argues the juvenile court erred in finding that Mother abandoned S.N., and that termination was in his best interests.    In reviewing an order terminating parental rights, we accept the court's factual findings if reasonable evidence supports them. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023).  We will affirm the court's legal conclusions—that one statutory ground for termination under A.R.S. § 8-533 has been proven by clear and convincing evidence—unless those conclusions are clearly erroneous. *Brionna J.*, 255 Ariz. 478–79, ¶ 31.

A.        **Abandonment**

¶10          Under A.R.S. § 8-533(B)(1), the juvenile court may terminate parental rights if the parent has abandoned the child.  Abandonment is defined as "the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing normal supervision."  A.R.S. § 8-531(1).  The "[f]ailure to maintain a normal parental relationship with the child *without just cause* for a period of six months constitutes prima facie evidence of abandonment."  *Id.* (emphasis added).

¶11          Mother argues the court committed legal error by finding that Mother did not have "just cause" for failing to maintain a normal parental relationship with S.N.  She contends the "just cause" language in A.R.S. § 8-531(1) "necessarily injects a subjective element" into an abandonment analysis, and that as a result, the court erred by not considering Mother's fears about Father before terminating her parental rights.  According to Mother, there was "overwhelming evidence that demonstrated Father was emotionally and physically abusive" during his and Mother's relationship and that her failure to maintain a relationship with S.N. was based on her "paralyzing fear of Father."  Thus, Mother argues the court's failure to consider Father's conduct and its effect on her constitutes reversible error.

¶12          We reject Mother's assertion that A.R.S. § 8-531(1) requires courts to consider the subjective reasons for a parent's failure to maintain a normal parental relationship.  Our supreme court has confirmed that "abandonment is measured not by a parent's subjective intent, but by the parent's conduct: the statute asks whether a parent has provided reasonable support, maintained regular contact, made more than minimal efforts to support and communicate with the child, and maintained a normal parental relationship." *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249–50, ¶ 18 (2000).  Thus, whether the court erred in finding that Mother

had abandoned S.N. turns on what Mother did or failed to do, rather than her reasons for such actions or inactions.

¶13 Mother acknowledged she had not seen or communicated with S.N. since 2012. She admitted that she did not complete the drug tests or pay child support required under the 2013 Order and never sought modification of that order. Likewise, Mother did not show she consistently sought contact with S.N. as the years went on; her testimony reflected that she asked Father once in 2015 to have contact with S.N., and that she asked to speak with S.N. after Jessica contacted her to discuss the termination petition. When circumstances prevent a parent from "exercising traditional methods of bonding with [her] child, [she] must act persistently to establish the relationship however possible and must vigorously assert [her] legal rights to the extent necessary." *Id.* at 250, ¶ 22. Mother's claimed attempts to communicate with S.N. in several instances over more than a decade do not support a finding that she acted persistently to maintain her parental relationship with S.N. Even assuming the truth of Mother's testimony, as well as the other evidence she offered about Father's abusive behavior, the court did not err in concluding she abandoned S.N.

## B. Best Interests

¶14 Mother argues the juvenile court erred by concluding that termination would be in S.N.'s best interests. She contends the court failed to consider the totality of the circumstances, referencing Father's and Jessica's abusive or violent conduct, and that the weight of this evidence made it unreasonable to conclude that termination would be in S.N.'s best interests.

¶15 The party seeking termination must establish that termination is in the child's best interests by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Termination of the parental relationship is in a child's best interests if continuing the parental relationship would harm the child or if the child would benefit from termination. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). "Courts must consider the totality of the circumstances existing at the time of the severance determination" in deciding whether termination is in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150–51, ¶ 13 (2018).

¶16 The record does not support Mother's assertion that the court disregarded the evidence she describes. In its termination order, the court acknowledged it "heard testimony to suggest that adoption would not be

in [S.N.'s] best interest[s] or that termination would be detrimental to [S.N.]," but that it did not agree with such testimony and heard no credible testimony to the contrary. Instead, the court found that S.N. would benefit from a formalized relationship between S.N. and Jessica, providing the child with permanency.

¶17        As to whether the weight of the evidence proved that termination was in S.N.'s best interests, the resolution of conflicting evidence is "uniquely the province of the juvenile court," and on appeal, we will not re-weigh the evidence or reassess the credibility of witnesses. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Though Mother and other witnesses testified that Father acted violently toward S.N. and Mother, Father denied such allegations. Moreover, the court heard testimony that S.N. was safe in the home, had a positive relationship with Jessica, and wanted to be adopted. The weight assigned to this evidence versus the allegations of abuse from other witnesses was within the court's discretion. Because reasonable evidence supports the court's conclusions, Mother has not shown the court erred.

**CONCLUSION**

¶18        We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:         JR