NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO L.H.

No. 1 CA-JV 25-0032

FILED 07-24-2025

Appeal from the Superior Court in Yavapai County
No. S1300JD202380002
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant Haylie H.*

Arizona Attorney General's Office, Phoenix
By Yu-Shan "Sunny" Kuo
*Counsel for Appellee Department of Child Safety*

Riddle Law Firm, PLLC, Cave Creek
By Joy L. Riddle
*Counsel for Appellee L.H.*

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Samuel A. Thumma joined.

**C A T T A N I**, Judge:

**¶1** Haylie H. ("Mother") appeals the superior court's termination of her parental rights as to L.H. ("Child").[1] For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2** In January 2023, the Department of Child Safety ("DCS") took Child (born in June 2021) into care based on safety concerns stemming from Mother's ongoing methamphetamine abuse. The superior court found Child dependent as to Mother, adopted a family-reunification case plan, and placed Child with Mother's mother ("Grandmother"). Mother's older daughter ("Sibling") was also in Grandmother's care under a permanent guardianship that had been in place since 2020.

**¶3** DCS offered Mother an array of reunification services, including visitation and substance abuse testing and treatment, and Mother engaged consistently and successfully in most of the services offered. Mother participated in supervised visitation with Child throughout the dependency, and DCS records reflect that she was prepared, attentive, and appropriate during visits. By late 2024, Mother had three scheduled weekly overnight visits with Child, supervised by Grandmother, plus additional supervised time two or three other days each week when feasible. DCS noted that Mother was "very much prepared and attentive to [Child's] needs and wants" during these overnight visits, and according to Grandmother, Mother "does an incredible job . . . when she is there."

**¶4** Mother continued to struggle, however, with substance abuse. She had a years-long history of methamphetamine use before DCS involvement. And during the first year of the dependency, Mother missed well over half of her required urinalysis tests and on multiple occasions tested positive for methamphetamine.

**¶5** Mother completed a three-month inpatient substance-abuse treatment program in March 2024 and continued with follow-up outpatient treatment. But she then relapsed, testing positive for methamphetamine several times from July through September 2024. A few weeks later, Mother's outpatient treatment provider closed her case and recommended a "higher level of care," noting that Mother had not shown the behavioral

---

[1] Child's father's parental rights were also terminated, but he is not a party to this appeal.

changes necessary to achieve and maintain sobriety despite months of treatment. Around that time, Mother also expressed unwillingness to return to residential treatment.

¶6            After Mother's relapse, the court granted DCS's request to change the case plan to severance and adoption, and DCS moved to terminate her parental rights to Child on the grounds of chronic abuse of dangerous drugs and 15 months' time-in-care. *See* A.R.S. § 8-533(B)(3), (8)(c). Mother then filed a motion requesting that the court instead appoint Grandmother as Child's permanent guardian. *See* A.R.S. § 8-871(A).

¶7            The court held a single trial on the termination and guardianship motions at which the DCS case manager, Mother, and Grandmother testified. Although the court had encouraged DCS to consider viability of a permanent guardianship, the case manager testified that guardianship in this case would leave an element of uncertainty and unpredictability undermining Child's long-term stability, including a higher risk of reentering foster care in the future. She noted that Mother had previously stated that she wanted to dissolve Grandmother's existing guardianship over Sibling, but acknowledged that Mother had taken no legal action to do so. The case manager testified that Child was in an adoptive placement that provided a stable, drug-free home and met all Child's needs, and that Child was otherwise adoptable.

¶8            For her part, Mother acknowledged ongoing struggles with methamphetamine use but highlighted the progress she had made in treatment and her dedication to overcoming her addiction. She noted that she had not tested positive for methamphetamine for three months preceding the trial. But she did not deny missing several scheduled drug tests the previous month, including one just a week before the trial. Mother described her role in "co-parent[ing]" with Grandmother during her frequent visits with Child and Sibling, and she emphasized her bond with Child. She explained that establishing a guardianship would give her more time—"a chance to be better and to show [Child that she] can be better"— and assured the court that she would "try [her] very best" to be ready to care for Child in the next year.

¶9            Grandmother testified as well, praising Mother's interactions with Child during visits and highlighting the strong bond between Mother and Child. Grandmother agreed that she would be willing to serve as Child's guardian if the court opted to establish a guardianship, and that she would likewise be willing to adopt Child if the court instead terminated Mother's parental rights. She clarified, however, that she contemplated the

guardianship continuing for only one year—"at some point it needs to end"—after which, if Mother was not yet ready to care for Child, she would pursue an adoption. Grandmother emphasized that she would want Mother to remain a part of Child's life regardless of the court's decision.

**¶10** The superior court terminated Mother's parental rights, finding a statutory basis for termination on both grounds alleged and that termination rather than guardianship would be in Child's best interests. The court noted that Child had lived with Grandmother for two years, more than half his life, and that Mother had not made much progress in overcoming her substance abuse issues over that time. Grandmother met all Child's needs and was willing to adopt him. The court concluded that adoption would ensure Child had a stable caregiver "without the disruption of additional litigation," reasoning that a permanent guardianship "is not as permanent as adoption."

**¶11** Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A). *See also* Ariz. R.P. Juv. Ct. 601(a), (b)(2)(F).

## DISCUSSION

**¶12** The superior court may terminate a parent–child relationship if clear and convincing evidence establishes at least one statutory ground for termination and a preponderance of the evidence shows termination to be in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). On review, we accept the court's factual findings if supported by reasonable evidence, giving due regard to that court's unique ability to weigh the evidence and assess witness credibility. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478, ¶ 30 (2023). We uphold the court's legal conclusions unless clearly erroneous. *Id.* at 478–79, ¶ 31.

**¶13** Mother does not challenge the statutory grounds for severance, and the record supports them. *See* A.R.S. § 8-533(B)(3), (8)(c). Rather, Mother asserts that the superior court erred by finding termination to be in Child's best interests given the availability, as an option, of a permanent guardian.

**¶14** The superior court may find termination to be in a child's best interests if the child would benefit from severance or be harmed by a denial of severance. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 13 (2018). The court considers the totality of the circumstances, including prospects for adoption, whether the placement is meeting the child's needs, and the parent's rehabilitative efforts. *Id.* at 148, 150–51, ¶¶ 1, 13; *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016). Stability and security for the child

are primary considerations. *Demetrius L.*, 239 Ariz. at 4, ¶ 15. In assessing the viability of a permanent guardianship, the court considers both whether the prospective guardianship is in the child's best interests and the inverse of the § 8-533(B) best-interests inquiry: whether "termination of parental rights would *not* be in the child's best interests." A.R.S. § 8-871(A)(4) (emphasis added); *cf. Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 478, ¶ 34 (2022) (noting the interplay of termination considerations with the guardianship-focused best-interests inquiry).

¶15 Here, although Mother views the evidence differently, the record supports the superior court's best-interests findings and assessment. The court found, and the record supports, that Child, then less than four years old, had been living more than half his life in a familial placement that met all his needs, that Grandmother was willing to adopt him, and that Child was otherwise adoptable, all facts showing a potential benefit from termination. *See Demetrius L.*, 239 Ariz. at 4, ¶ 12.

¶16 The court also considered Mother's rehabilitative track record over the two-year dependency. *See Alma S.*, 245 Ariz. at 151, ¶ 15. Although Mother characterizes this as "significant progress, even though it was not perfect," the superior court could reasonably find her progress to be insufficient to defeat a best-interests finding for termination given she relapsed, using methamphetamine, about 18 months into a two-year dependency. We do not reweigh the evidence on appeal. *See id.* at ¶ 18.

¶17 Mother further asserts that the court failed to consider her bond with Child and her positive parenting interactions with him during her frequent visits. But there is no indication that the superior court failed to consider Mother's relationship with Child, just that it gave more weight to other factors. *See also Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98–99, ¶ 12 (App. 2016) (existence of bond not alone dispositive of best interests).

¶18 Finally, Mother argues that a prospective permanent guardianship means Child would derive no benefit from termination. Potential for a permanent guardianship as an alternative to termination is certainly a relevant consideration—one that the superior court here addressed directly. But availability of a potential guardian, while relevant, is not dispositive; instead, the court must assess which path, guardianship or termination, would be in the child's best interests under the unique circumstances of each case. *See* A.R.S. §§ 8-533(B), -871(A), (A)(4).

¶19 Although Mother faults the court's characterization of guardianship as "not as permanent" as adoption, the record here supports that characterization. Grandmother expressed willingness to serve as Child's guardian—but only for another year. Child would then face the disruption and uncertainty of renewed litigation seeking severance if Mother was not then able to parent, rather than the security and stability of an adoption by Grandmother. *See Demetrius L.*, 239 Ariz. at 4, ¶ 15. Even if the superior court could reasonably have come to a different conclusion, as in the unpublished decision on which Mother relies, *see Ariz. Dep't of Econ. Sec. v. William T.*, 1 CA-JV 06-0204, 2007 WL 5494598, at *5–6, ¶¶ 25–30 (Ariz. App. Sept. 4, 2007) (mem. decision), the record nevertheless supports the court's ruling that termination (with Grandmother ready to adopt) and not guardianship was in Child's best interests. *See Alma S.*, 245 Ariz. at 151, ¶ 18 (appellate court does not reweigh superior court's resolution of even "sharply disputed" facts).

**CONCLUSION**

¶20 We affirm.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR