NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

IN RE TERMINATION OF PARENTAL
RIGHTS AS TO I.C. and L.R.

No. 1 CA-JV 25-0027

FILED 09-30-2025

---

Appeal from the Superior Court in Maricopa County
No. JD34854
The Honorable Suzanne E. Cohen, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Madalyn C.*

Arizona Attorney General's Office, Tucson
By Jennifer L. Thorson
*Counsel for Appellee Department of Child Safety*

Law Office of Joseph Ramiro-Shanahan PLLC, Scottsdale
By Jessica E. Strain
*Counsel for Appellee Child I.C.*

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant Antonio R.*

Joshua Fry Law, Phoenix
By Joshua Fry
*Counsel for Appellee Child L.R.*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

---

**J A C O B S,** Judge:

¶1        Madalyn C. ("Mother") and Antonio R. ("L.R.'s Father") appeal the juvenile court's ruling terminating their parental rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### A.        I.C. Is Found Dependent but Later Returned to Mother.

¶2        I.C. was born in 2016.  I.C. was found dependent as to Mother because of inappropriate care and supervision, and as to his father, a nonparty to this case, for neglect and abandonment, in 2017.  After Mother met the juvenile court's requirements, Mother moved for I.C. to be returned to her physical custody.  The court granted the motion returning I.C. to Mother's care.  In 2018, the juvenile court dismissed the dependency action.

### B.        I.C. Is Found Dependent as to Mother and L.R. Is Found Dependent as to Mother and L.R.'s Father.

¶3        In September 2022, the Department of Child Safety ("DCS") received a report of "a strong smell of fentanyl coming from [Mother] and [L.R.'s Father's] apartment."  During a search of the apartment, L.R.'s Father "was observed throwing burnt foil in the trash."  A "grinder and a wax pen" were found in Mother's purse.  Father admitted to smoking "Perks."

¶4        In November, DCS received another report that Mother tested positive for fentanyl three days after giving birth to L.R.  She admitted using marijuana and fentanyl while pregnant.  Mother reported she last used fentanyl a week before L.R.'s birth.  A month later, DCS petitioned for dependency for I.C., as to Mother, and L.R., as to Mother and L.R.'s Father.  The court found both children dependent.

**C.**     **I.C. and L.R.'s Attorneys Move to Sever Mother and L.R.'s Father's Parental Rights. A Termination Adjudication Hearing Is Held.**

**¶5**     In August 2024, counsel for the children moved to terminate Mother and L.R.'s Father's parental rights. They cited: (1) chronic substance abuse, A.R.S. § 8-533(B)(3); (2) out-of-home placement for a total of more than nine months and the parents have "substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement," A.R.S. § 8-533(B)(8)(a); and (3) out-of-home placement for a total of more than fifteen months, the parents have not remedied the cause of the placement, and there is a substantial likelihood that the parents will "not be capable of exercising proper and effective parental care and control in the near future," A.R.S. § 8-533(B)(8)(c). The court held a termination adjudication hearing on February 24, 2025.

### 1.     Mother Testifies

**¶6**     Mother testified about her drug use. She began using drugs when she was about 13 or 14 years old and is now 25. Mother "started using fentanyl in 2020" after being clean from heroin for the previous six years. She admitted buying pills just before L.R.'s birth, using fentanyl while pregnant, and that L.R. was a substance-exposed newborn. Mother stated L.R. was transferred to Hushabye Nursery shortly after birth because L.R. was experiencing withdrawal symptoms. For a time, Mother used three to four fentanyl pills per day. She admitted police found drug paraphernalia in her car in January 2024. Mother continued to use marijuana.

**¶7**     Mother also testified about her experiences with services DCS offered. She missed several months of testing since November 2022 but tested positive for fentanyl 30 times. Mother knew she tested positive for fentanyl 11 times between September 2024 and January 2025, but contended she stopped using fentanyl on November 1, 2024; she believes the tests were tampered with or false positives. DCS also offered her services through Terros and the Nurturing Parenting Program (NPP), both of which were closed out for lack of participation. Mother contended her employment interfered with her ability to participate. Mother also received services through Hushabye, which were closed for lack of engagement but reopened in January 2025. Mother was enrolled in a program which provides her with methadone treatment, and had been improving.

**¶8**     Mother also testified about her relationship with her children. She testified she "would like" more time "to be able to demonstrate [her]

sobriety." Mother testified she had regular visitation with her children but that intensive care sometimes declines visitation. L.R. has been in foster care her entire life, so Mother has never parented her outside her visits. Mother explained I.C. has been in DCS' custody for almost three-and-a-half years—nearly half his life. Mother felt she would be able to maintain sobriety and understood what she needed to do as a parent.

### 2.  L.R.'s Father Testifies

¶9        L.R.'s Father testified that, like Mother, he began using fentanyl during COVID. He had used heroin and methamphetamines from the age of 15. He was regularly using fentanyl when DCS began its investigation. L.R.'s Father recalled I.C. had caught him doing fentanyl at least once. L.R.'s Father was offered drug testing and missed over 80 tests before starting to test in March 2024. From March 2024 to the hearing date, L.R.'s Father tested positive for fentanyl more than 20 times, his most recent being only a month before the hearing. Like Mother, L.R.'s Father contests the results, contending he has been sober since November 1, 2024.

¶10       He also testified about the services in which he engaged and his relationship with L.R. L.R.'s Father was referred to Terros but was closed out in January 2025 for lack of engagement. He also attended programming at Hushabye Nursery. Similarly, he engaged in NPP and engaged in supervised parenting time. He stated he "want[s] to be there for [L.R.]" L.R.'s Father testified he felt bonded to both children and that he was willing to re-engage in services.

### 3.  A DCS Case Manager Testifies

¶11       A DCS case manager had worked with the children since November 2024. The case manager testified she believed Mother and L.R.'s Father were "unable to discharge [their] parental responsibilities because of [their] history with chronic [substance abuse]," the condition would continue for an indeterminate period, and DCS "made reasonable and diligent efforts to provide reunification services." She stated that after Mother complained the positive testing was an error, her manager contacted the testing company which confirmed the test was accurate in December 2024. She also testified that both children have been with DCS placements for more than fifteen months and that both parents have been "unable to remedy the circumstances that caused the child[ren] . . . to be in an out-of-home placement." She further stated she did not think Mother or L.R.'s Father would be "capable of exercising proper and effective parental care and control in the near future." She testified termination was in the

children's best interests because it would allow them to be adopted and provide permanency and stability.

### D. The Juvenile Court Terminates Mother and L.R.'s Father's Parental Rights.

¶12 After the termination adjudication hearing, the juvenile court terminated Mother and L.R.'s Father's parental rights. The court found DCS proved two grounds for termination by clear and convincing evidence: (1) prolonged/chronic substance abuse, A.R.S. § 8-533(B)(3); and (2) out-of-home placement for fifteen months, A.R.S. § 8-533(B)(8)(c). Moreover, it found termination was in the children's best interests because both children are adoptable, their placements wish to adopt them, the children are bonding with their placements, there was a lack of testimony of the significant bond between the children and parents, the time both children have spent with their placements is significant, it would provide for permanency, the children are thriving with their placements, and the placements are providing sibling visits.

¶13 Mother and L.R.'s Father timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 8-235, 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

### The Juvenile Court Did Not Err By Terminating Mother and L.R.'s Father's Parental Rights.

¶14 A court may terminate parental rights where it finds: (1) clear and convincing evidence of a ground for termination under A.R.S. § 8-533(B); and (2) a preponderance of the evidence shows termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005); A.R.S. § 8-533(A)-(B). L.R.'s Father contends the court erred by finding DCS proved the grounds for termination by clear and convincing evidence. Mother argues the court erred by finding termination in the children's best interests. We address each argument.

### A. The Court Did Not Err By Finding DCS Had Proven Termination Grounds as to L.R.'s Father by Clear and Convincing Evidence.

¶15 Father contends the juvenile court erred by finding DCS proved termination grounds by clear and convincing evidence. Here, the

juvenile court found two grounds proven: chronic substance abuse and fifteen months out-of-home placement. We see no error.

¶16 Section 8-533(B)(3) allows a court to terminate a parent-child relationship if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs, controlled substances . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." "Because the juvenile court is in the best position to weigh the evidence and assess witness credibility," we must accept its factual findings if they are supported by "reasonable evidence and inferences." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3 ¶ 9 (2016). We will not affirm clearly erroneous legal conclusions. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 479 ¶ 31 (2023); *see also Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 580 ¶ 10 (2021).

¶17 Reasonable evidence supports the juvenile court's findings. The court first found L.R.'s Father had a history of chronic substance abuse as: he admits using drugs since he was a teenager (about 10 years); his drug tests have shown he has only been clean from fentanyl for a month; and he is still using marijuana. The court next found he cannot discharge parental responsibilities because he "has not demonstrated any times of being clean" and "missed over a year of testing." The court expressed concern he was still using marijuana and did not "understand the affect substance abuse can have on parenting." The court then found there was a "reasonable belief that chronic drug abuse will continue" because he is at most only one month sober, "has not shown [he] participated in the necessary treatment to help [him] stay sober," and has a "history of relapsing." The court also found DCS "made reasonable efforts to reunify the family" as L.R.'s "Father was offered services including, random urinalysis testing, a substance abuse assessment and treatment, numerous [NPP] referrals and supervised visitation through a case aide."

¶18 Despite these detailed findings, L.R.'s Father argues DCS did not prove this ground by clear and convincing evidence because he "consistently participated in substance abuse treatment throughout the case, albeit with varying results[;] . . . testified that he had been clean since November 1, 2024[;] [a]nd evidence suggested [he] had the ability to maintain his sobriety" because he had recovered from methamphetamine addiction. He also points to his "successful visitations with his daughter."

¶19 L.R.'s Father's efforts to get clean are commendable. And the juvenile court rightly acknowledged that he "consistently utilize[d] supervised visitation . . . [and] [t]here is no question the parents love the

children." But L.R.'s Father identifies no finding that lacks reasonable evidence. The court was in the best position to weigh the evidence, so we cannot say it erred by finding L.R.'s Father had a history of chronic substance abuse and that DCS proved that ground for termination by clear and convincing evidence. *See Demetrius L.*, 239 Ariz. at 3 ¶ 9. Because the court did not err by finding the chronic substance abuse ground proven by clear and convincing evidence, we need not evaluate its analysis of the out-of-home placement ground.

### B. The Court Did Not Err By Finding Termination of Mother's Parental Rights Was in the Children's Best Interests.

¶20 Mother asserts the juvenile court erred by finding termination was in the children's best interests. "[T]ermination is in the child's best interests if either: (1) the child will benefit from [the] severance; or (2) the child will be harmed if severance is denied." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). "[C]ourts must consider the totality of the circumstances existing at the time of the severance determination." *Id.* This includes a child's adoptability, *Lawrence R. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 585, 588 ¶ 11 (App. 2008), and a parent's rehabilitation efforts, *Alma S.*, 245 Ariz. at 151 ¶ 15.

¶21 Mother contends the court made unsupported factual findings, demonstrating it did not consider the totality of the circumstances. *See Alma S.*, 245 Ariz. at 150 ¶ 13. We disagree.

¶22 *First*, she contends "the record did not support the juvenile court's finding that 'I.[C.] has already suffered through one dependency only to be returned home then removed 4 years later for the same reason'" because "[n]o testimony or evidence supported a finding about I.C. suffering during the previous dependency case." But I.C. was declared dependent four years before this case arose. The court noted the first dependency to explain the children would benefit from termination because it would provide permanency. The record supports the court's finding about the dependency. The court's linkage between that fact and the expected benefit of permanency was likewise not error.

¶23 *Second*, Mother asserts the "court improperly found 'there was not much testimony about a significant bond,' and then focused only on the bond between the child and their respective placements." Further, she contends the finding demonstrates the court "improperly ignored the evidence admitted as exhibits." The record supports a literal reading of the court's finding – almost no testimony was presented as to Mother's bond

with L.R. and I.C., which is illustrated by Mother's lack of citations to testimony contradicting this finding. The record supports Mother's contention that she has a strong bond with the children. But the testimony and exhibits also show the children are bonded with their placements and thriving. And the court explicitly noted it considered "the totality of the circumstances, including [Mother's] efforts toward reunification, the parent-child bond, and fitness to parent." There is no indication the court improperly disregarded evidence of Mother's bond with the children. Instead, it appears the court weighed the evidence and found termination in the children's best interests. *See Demetrius L.*, 239 Ariz. at 2 ¶ 2.

**¶24**        *Third*, Mother contends the court erred by failing to address that I.C.'s placement was open to guardianship, termination would deprive the children of visitation with Mother, and Mother had some level of participation in all recommended services. But the court is not required to make specific findings on all of the circumstances present at the time of termination. It need only find that termination would benefit the child or child would be harmed from a continued relationship. *Alma S.*, 245 Ariz. at 150 ¶ 13. Here, the juvenile court found termination would benefit the children because it would provide permanency and this finding is supported by reasonable evidence including the children's adoptability; the children's bonds with their placements, which they have been with for years; and that the children are currently thriving in their placements' care. Thus, reasonable evidence supports the juvenile court's best interests finding. *See Jessie D.*, 251 Ariz. at 583 ¶ 29.

## CONCLUSION

**¶25**        We affirm.

